*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HAZIM GULLA, IKHALAS GULLA, HEATHER GULLA, HOLLY GULLA, HEIDI GULLA, DARRELL DAVIS, BARBARA DAVIS, ELISA KLINE, MASON KLINE, ELIZABETH EBERHARDT, JIMMY JAMES, LAROSA E. PATRICK, HELEN CHAPMAN, DAMARIUS CHAPMAN, SADE CHAPMAN, DIONTE CHAPMAN, TAJUANA CHAPMAN, TASHIANA CHAPMAN, KYEIRA HOWELL, LASHONDA JONES, DOROTHY CHAPMAN, individually and as conservator of ESTATE OF LULA PEARL ATKINS-NELSON, SHAMIYA CHAPMAN, DUQUAN CHAPMAN, HARRY CHAPMAN, MICHAEL LYMON, DEBORAH CHAPMAN-MARSHALL, FREDERICK MARSHALL, ESSIE CHAPMAN, INEZ MARIE WALKER, RONNIE L. WALKER, SHAWANA M. WALKER, STEVEN W. REDMOND, JEROME CHAPMAN, JEANETTE CHAPMAN, MAURICE CHAPMAN, MAY J. CHAPMAN, JOHN W. CHAPMAN, BOBBIE RODGERS, HENRY C. BIGGS, RENITA M. COLEMAN, MELEISA A. BETTS, ANGELA PRICE, D'ANNA N. PRICE, AA'NIYAH EVANS, ARTAYAH PRICE, BOBBY DEAN GRACE, TERRY GRAVELLE, MARILYN DONEY-GRAVELLE, ANGELINA DONEY, ANNE M. HICKS, JOSHUA HICKS, LAQUANTUS CARDELL, RAVEN NEAL, ROMERO CARDWELL, SIRQRON CARDWELL, KATHLEEN CLIFTON, CARLTON BUTLER, DANIEL CLIFTON, DEBBIE MITCHELL-BUTLER, MAGNOLIA YOUNGER, RYAN YOUNGER, GOWON YOUNGER, TIESHA TAYLOR, DAMARRION E. TAYLOR, MARIAH A. TAYLOR, KANIYA TAYLOR, and PAULA BROWN,

UNPUBLISHED
January 24, 2019

Plaintiffs-Appellants,

v

STATE OF MICHIGAN, GOVERNOR,
DEPARTMENT OF ENVIRONMENTAL
QUALITY, DEPARTMENT OF HEALTH AND
HUMAN SERVICES, EDWARD KURTZ,
DARNELL EARLEY, and JERRY AMBROSE,

No. 340017
Court of Claims
LC No. 16-000298-MZ

Defendants-Appellees,
and

DAN WYANT,

Defendant.

LAWRENCE WASHINGTON, JR., individually
and next friend of TAYLOR WASHINGTON,
minor, MORGAN WASHINGTON, minor,
CHLOE WASHINGTON, minor, MADISON
WASHINGTON, minor, and LAWRENCE
WASHINGTON, minor, AARON SWINGER,
ANGELA WAY, and CONNIE MCNEAL,

Plaintiffs-Appellants,

v

GOVERNOR, STATE OF MICHIGAN,
DEPARTMENT OF ENVIRONMENTAL
QUALITY, DEPARTMENT OF HEALTH AND
HUMAN SERVICES, DARNELL EARLEY,
GERALD AMBROSE, and MIKE BROWN,

No. 340275
Court of Claims
LC No. 16-000300-MM

Defendants-Appellees,
and

ED KURTZ,

Defendant.

HAZIM GULLA, IKHALAS GULLA, HEATHER GULLA, HOLLY GULLA, HEIDI GULLA, DARRELL DAVIS, BARBARA DAVIS, ELISA KLINE, MASON KLINE, ELIZABETH EBERHARDT, JIMMY JAMES, LAROSA E. PATRICK, HELEN CHAPMAN, DAMARIUS CHAPMAN, SADE CHAPMAN, DIONTE CHAPMAN, TAJUANA CHAPMAN, TASHIANA CHAPMAN, KYEIRA HOWELL, LASHONDA JONES, DOROTHY CHAPMAN, individually and as conservator of ESTATE OF LULA PEARL ATKINS-NELSON, SHAMIYA CHAPMAN, DUQUAN CHAPMAN, HARRY CHAPMAN, MICHAEL LYMON, DEBORAH CHAPMAN-MARSHALL, FREDERICK MARSHALL, ESSIE CHAPMAN, INEZ MARIE WALKER, RONNIE L. WALKER, SHAWANA M. WALKER, STEVEN W. REDMOND, JEROME CHAPMAN, JEANETTE CHAPMAN, MAURICE CHAPMAN, MAY J. CHAPMAN, JOHN W. CHAPMAN, BOBBIE RODGERS, HENRY C. BIGGS, RENITA M. COLEMAN, MELEISA A. BETTS, ANGELA PRICE, D'ANNA N. PRICE, AA'NIYAH EVANS, ARTAYAH PRICE, BOBBY DEAN GRACE, TERRY GRAVELLE, MARILYN DONEY-GRAVELLE, ANGELINA DONEY, ANNE M. HICKS, JOSHUA HICKS, LAQUANTUS CARDELL, RAVEN NEAL, ROMERO CARDWELL, SIRQRON CARDWELL, KATHLEEN CLIFTON, CARLTON BUTLER, DANIEL CLIFTON, DEBBIE MITCHELL-BUTLER, MAGNOLIA YOUNGER, RYAN YOUNGER, GOWON YOUNGER, TIESHA TAYLOR, DAMARRION E. TAYLOR, MARIAH A. TAYLOR, KANIYA TAYLOR, and PAULA BROWN,

        Plaintiffs-Appellees,

v

STATE OF MICHIGAN, GOVERNOR, DEPARTMENT OF ENVIRONMENTAL QUALITY, and DEPARTMENT OF HEALTH

No.  340458
Court of Claims
LC No.  16-00298-MZ

-3-

AND HUMAN SERVICES,

Defendants-Appellants,

and

EDWARD KURTZ, DARNELL EARLEY,
JERRY AMBROSE, and DAN WYANT,

Defendants.

_____

LAWRENCE WASHINGTON, JR., individually
and next friend of TAYLOR WASHINGTON,
minor, MORGAN WASHINGTON, minor,
CHLOE WASHINGTON, minor, MADISON
WASHINGTON, minor, and LAWRENCE
WASHINGTON, minor, AARON SWINGER,
ANGELA WAY, and CONNIE MCNEAL,

Plaintiffs-Appellees-Cross-
Appellants,

v

GOVERNOR, STATE OF MICHIGAN,
DEPARTMENT OF ENVIRONMENTAL
QUALITY, and DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

Defendants-Appellants-Cross-
Appellees,

and

DARNELL EARLEY, GERALD AMBROSE ,
MIKE BROWN  and ED KURTZ,

Defendants.

_____

No. 340890
Court of Claims
LC No. 16-000300-MM

Before: Servitto, P.J., and K. F. KELLY, and SHAPIRO, JJ.

PER CURIAM.

In these consolidated appeals, plaintiffs (residents of and property owners in the City of Flint) appeal as of right the Court of Claims' opinions and orders granting summary disposition in favor of defendants Edward Kurtz, Darnell Earley, and Gerald Ambrose (the emergency

-4-

manager defendants) due to a lack of subject matter jurisdiction, and granting, in part, defendants' State of Michigan, Governor, Department of Environmental Quality, and Department of Health and Human Services (the state defendants) motions for summary disposition. The state defendants also appeal as of right the Court of Claims' opinions and orders denying, in part, their motions for summary disposition. We reverse and remand for further proceedings.

The salient background facts of this case were succinctly set forth in *Mays v Snyder*, 323 Mich App 1, 19-22; 916 NW2d 227 (2018) and, accordingly, need not be restated here. Suffice it to say, these matters arise from the situation commonly referred to as the "Flint water crisis." In docket nos. 340017 and 340458, plaintiffs filed an action on December 8, 2016, against defendants for their alleged actions and decisions which resulted in the contamination of plaintiffs' water supply and their exposure to toxic and hazardous substances. Plaintiffs' causes of action were for violation of due process-bodily integrity, and inverse condemnation, as well as claim for injunctive relief under the Michigan Natural Resources and Environmental Protection Act or, alternatively, an action of relief for diagnostic medical and psychological/counseling services and treatment. The state defendants moved for summary disposition in their favor arguing that plaintiffs failed to plead in avoidance of governmental immunity, that they cannot state an inverse condemnation claim, and that the court lacks jurisdiction over one of plaintiffs' claims. The Court of Claims denied, in part, the motion with respect to the violation of the Michigan Natural Resources and Environmental Protection Act, and granted the motion with respect to the remaining claims. The emergency manager defendants also moved for summary disposition in their favor, and the Court of Claims granted the motion, finding that it lacked subject matter jurisdiction.

In docket nos. 340275 and 340890, plaintiffs brought an action against defendants on December 13, 2016. Plaintiffs alleged that defendants violated their right to due process based on a state created danger, right to due process based on the bodily integrity doctrine, and right to fair compensation for the government taking of private property (inverse condemnation). As in the case above, all defendants moved for summary disposition. The Court of Claims denied the state defendants' motion, in part, with respect to plaintiffs' claim of an unconstitutional taking of property, and granted summary disposition in the state defendants' favor on the remaining two claims in plaintiffs' complaint. The Court of Claims granted summary disposition in favor of the emergency manager defendants, finding that it lacked subject matter jurisdiction.

Plaintiffs and the state defendants appealed the Court of Claims' rulings and this Court consolidated the matters on appeal.

I. Emergency Manager Defendants

Plaintiffs first assert on appeal that the Court of Claims erred in holding that the emergency manager defendants were not "state officers" and that the court thus did not have subject matter jurisdiction over plaintiffs' claims against them. We agree.

We review de novo a lower court decision on a motion for summary disposition. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). A motion for summary disposition brought under MCR 2.116(C)(4) tests the trial court's subject-matter

jurisdiction. *Braun v Ann Arbor Charter Tp*, 262 Mich App 154, 157; 683 NW2d 755 (2004). When reviewing a motion pursuant to MCR 2.116(C)(4), this Court must determine whether the pleadings demonstrate that the defendant was entitled to judgment as a matter of law, or whether the affidavits and other proofs show that there was no genuine issue of material fact. *Weishuhn v Catholic Diocese of Lansing*, 279 Mich App 150, 155; 756 NW2d 483 (2008).

Whether a court has subject matter jurisdiction over a claim is a question of law that is reviewed de novo. *Harris v Vernier*, 242 Mich App 306, 309; 617 NW2d 764 (2000). Consideration of the Court of Claims Act is a question of statutory construction, which is also reviewed de novo as a question of law. *Parkwood Ltd Dividend Hous Ass'n v State Hous Dev Auth*, 468 Mich 763, 767; 664 NW2d 185 (2003).

The Court of Claims has exclusive jurisdiction:

> (a) To hear and determine any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers notwithstanding another law that confers jurisdiction of the case in the circuit court. [MCL 600.6419(1)]

Relevant to the instant matters, "the state or any of its departments or officers" means

> this state or any state governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of the state, or an officer, employee, or volunteer of this state or any governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of this state, acting, or who reasonably believes that he or she is acting, within the scope of his or her authority while engaged in or discharging a government function in the course of his or her duties. [MCL 600.6419(7)]

The issue of whether the emergency manager defendants meet the definition of "state officers" as set forth in MCL 600.6419(7), such that the Court of Claims has jurisdiction over claims against them, was squarely and conclusively addressed by this Court in *Mays*, 323 Mich App at 49. In that case, the plaintiff water users and property owners in the city of Flint, Michigan, brought an action against the Flint emergency manager defendants and the state defendants for state-created danger, violation of plaintiffs' due-process right to bodily integrity, denial of fair and just treatment during executive investigations, and unconstitutional taking via inverse condemnation. *Id*. at 23. The emergency manager defendants moved for summary disposition, arguing that they were not considered "state officers" under the Court of Claims Act (CCA) and that the court thus had no jurisdiction over claims against them. The Court of Claims denied the motion. *Id*. at 45. On appeal, a panel of this Court held that the emergency manager defendants "clearly fall within the act's own definition and, as intended, within the Court of Claims' jurisdiction." *Id*. at 49. The *Mays* Court stated that we need, and may, not look past the CCA for a definition of "state officer" as it is used in the act and that the emergency managers took the challenged actions "while acting within the scope of their official authority and in the discharge of a government function." *Id*. The Court held:

We agree that the totality of the circumstances indicates that an emergency manager operates as an administrative officer of the state. Further, it is beyond dispute that at a minimum, an emergency manager must be characterized as an employee of the state. Although the CCA does not provide a specific definition for "employee," this Court may look to dictionary definitions to "construe undefined statutory language according to common and approved usage." *In re Casey Estate*, 306 Mich App 252, 260; 856 NW2d 556 (2014). *Black's Law Dictionary* (10th ed.) defines "employee" as "[s]omeone who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." Emergency managers, who are appointed by the governor, serve at the governor's pleasure, are subject to review by the state treasurer, and operate only within the authority granted by the state government, easily fall within this definition. Indeed, our Court has recognized that political appointees, like the emergency managers here, serve as at-will employees of the governmental agency that appointed them. See *James v City of Burton*, 221 Mich App 130, 133–134; 560 NW2d 668 (1997). An emergency manager, as an appointee of the state government, is an employee of the state government. Claims against an emergency manager acting in his or her official capacity therefore fall within the well-delineated subject-matter jurisdiction of the Court of Claims. [*Id*. at 50-51]

We are bound, by the doctrine of stare decisis, by opinions published by the Court of Appeals after November 1, 1990. *Catalina Mktg Sales Corp v Dept of Treasury*, 470 Mich 13, 23; 678 NW2d 619 (2004); MCR 7.215(C)(2). Under *Mays*, then, the emergency manager defendants are "state officers" or "employees" under the CCA and the Court of Claims thus has jurisdiction over claims against them. Nevertheless, the state defendants assert that *Mays* was wrongly decided and urge this Court to note its disagreement with that decision and convene a conflict panel under MCR 7.215(J). We decline to do so.

We agree with the *Mays* Court ruling that the emergency manager defendants are officers or employees of the state. This Court noted the same conclusion in *Boler v Governor*, ___ Mich App ___; __NW2d ___ (2018). We also agree with the *Mays* Court that the question is not, as the state defendants contend, whether the Legislature, in passing 2012 PA 436, intended to make emergency managers state officers, but whether they are, in fact, officers or employees under the CCA definition of the same. *Mays*, 323 Mich App at 48. But, even if PA 436 governed the decision, "[u]nder PA 436, an emergency manager is granted the express authority to bring suits in the Court of Claims 'to enforce compliance with any of his or her orders or any constitutional or legislative mandates, or to restrain violations of any constitutional or legislative power or his or her orders.' MCL 141.1552(1)(q)." *Id*. at 52. Because the public act specifically contemplates proceedings involving emergency managers in the Court of Claims, this must necessarily include *all* proceedings. It would be illogical for the Legislature to provide that an emergency manager is to bring any suit in the Court of Claims that arises from the powers exercised by the emergency manager under the public act, yet *preclude* suits against the emergency manager in the Court of Claims arising from the same exercises of power. It would also be nonsensical to find that the emergency manager defendants acted only on behalf of the City of Flint, particularly when the City voted to return to the Detroit water system rather early on, and the emergency managers exercised their powers to veto that decision. If the emergency

manager defendants were, in fact, acting only on behalf of the City, they would have cooperated with City leaders and residents and ensured that the City's residents were provided potable water. We also find the *Mays* Court's analysis concerning emergency managers as receivers particularly compelling. *Id*. at 53-56.

Whether or not the emergency managers had contracts labeling them as independent contractors is irrelevant. It is undisputed that an emergency manager is appointed by the governor and serves at the pleasure of the governor. MCL 141.1549(1) and (1)(d). Political appointees serve as at-will employees of the governmental agency that appointed them. See *James*, 221 Mich App at 133–134. Moreover, as pointed out by the emergency manager defendants themselves, the distinction between an employee and an independent contractor is determined by applying the "economic reality test." *Adanalic v Harco Nat Ins Co*, 309 Mich App 173, 190–91; 870 NW2d 731 (2015). Factors to be considered under this test include: "(a) control of the worker's duties, (b) payment of wages, (c) right to hire, fire and discipline, and (d) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Id.* at 191.

The state controls the emergency managers' actions. See, MCL 141.1549(1), providing that an emergency manager is appointed by and serves at the pleasure of the governor; MCL 141.1549(2), providing for the powers of an emergency manager; MCL 141.1549(5), requiring an emergency manager to submit quarterly reports to the state treasurer; and MCL 141.1562 requiring the governor to review and approve a determination by the emergency manager whether the financial emergency has been rectified. The state also pays the financial manager's wages. See, MCL 141.1549(2)(e). The state, through the governor, has the sole authority to hire, fire and discipline an emergency manger. See, MCL 141.1549(1); MCL 141.1549(9), subjecting an emergency manager to the standards of conduct and ethics for public officers and state officers. Finally, the performance of an emergency manager's duties is integral to the state's business toward the accomplishment of a goal. MCL 141.1543 specifically declares:

> (a) That the health, safety, and welfare of the citizens of this state would be materially and adversely affected by the insolvency of local governments and that the fiscal accountability of local governments is vitally necessary to the interests of the citizens of this state to assure the provision of necessary governmental services essential to public health, safety, and welfare.

> (b) That it is vitally necessary to protect the credit of this state and its political subdivisions and that it is necessary for the public good and it is a valid public purpose for this state to take action and to assist a local government in a financial emergency so as to remedy the financial emergency by requiring prudent fiscal management and efficient provision of services, permitting the restructuring of contractual obligations, and prescribing the powers and duties of state and local government officials and emergency managers.

> (c) That the fiscal stability of local governments is necessary to the health, safety, and welfare of the citizens of this state and it is a valid public purpose for this state to assist a local government in a condition of financial emergency by providing for procedures of alternative dispute resolution between a local

government and its creditors to resolve disputes, to determine criteria for establishing the existence of a financial emergency, and to set forth the conditions for a local government to exercise powers under federal bankruptcy law.

(d) That the authority and powers conferred by this act constitute a necessary program and serve a valid public purpose.

The state defendants contend that *Mays* creates confusion because in *Kincaid v City of Flint*, 311 Mich App 76, 87; 874 NW2d 193 (2015), this Court rejected an argument that an act of an emergency manager is an act of the governor. First, this case differs from *Kincaid* in that plaintiffs do not contend that the acts of the emergency managers were acts of the Governor. Rather, plaintiffs assert that acts of the emergency managers were undertaken by them as officers or employees of the state. Second, the rejection is dicta, since the issue for resolution by the *Kincaid* Court was whether the emergency manager was authorized to take the ratification action that it did. *Id*. at 82-83. The *Kincaid* Court concluded that it was not. *Id*. at 91.

While the state defendants have sought leave with our Supreme Court in both *Mays* and *Boler*, the Supreme Court has not granted leave in those matters and both remain binding precedent. The Court of Claims' rulings that the emergency manager defendants were not officers of the state for purposes of the CCA were thus in error. While the emergency manager defendants posit that they were entitled to summary disposition in any event due to plaintiffs' failure to comply with the statutory notice requirement in MCL 600.6431(3), we reject that argument, as addressed below.

## II. Inverse Condemnation

The state defendants argue on appeal that the Court of Claims erred in finding that plaintiffs properly pleaded claims of inverse condemnation in avoidance of governmental and that plaintiffs satisfied the notice of intent requirement of MCL 600.6431(3) for this claim. We disagree.

We review the trial court's ruling on a motion for summary disposition de novo and review a determination as to governmental immunity de novo as a matter of law. *Kendricks v Rehfield*, 270 Mich App 679, 681–82; 716 NW2d 623 (2006). A party is entitled to summary disposition under MCR 2.116(C)(7), if the plaintiff's claims are "barred because of immunity granted by law . . . ." The moving party may support its motion with admissible affidavits, depositions, admissions, or other documentary evidence and the contents of the complaint are accepted as true unless contradicted by the evidence provided. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). Whether MCL 600.6431 requires dismissal of a plaintiff's claim for failure to provide the designated notice is a question of statutory interpretation, which this Court reviews de novo. *Mays*, 323 Mich App at 24–25.

## A. Failure to State a Claim

MCL 691.1407 broadly grants immunity to governmental agencies and officers and employees of governmental agencies so long as they are engaged in the discharge of a governmental function, or are acting in their employment or service while acting on behalf of a

governmental agency. Further, an officer or employee of a governmental agency is only entitled to immunity if:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [MCL 691.1407(2)]

In order to assert a viable claim against a governmental agency, a plaintiff must plead facts establishing that an exception to governmental immunity applies to his or her claim. *Wood v City of Detroit*, 323 Mich App 416, 420; 917 NW2d 709 (2018). If a claim is brought against an officer or employee of a governmental agency, the burden is on the governmental officer or employee to raise and prove his entitlement to immunity as an affirmative defense. *Odom*, 482 Mich at 479.

The state defendants first assert that plaintiffs failed to state claims of inverse condemnation. We disagree.

> The Fifth Amendment of the United States Constitution and Article 10 of the Michigan Constitution both prohibit the taking of private property for public use without just compensation. Through its power of eminent domain, however, the state may follow the procedures outlined in the Uniform Condemnation Procedures Act and condemn, or "take," private property for public use by providing the requisite compensation. A property owner may bring an inverse condemnation action seeking just compensation for a "de facto taking," when the state fails to follow those procedures. "While there is no exact formula to establish a de facto taking, there must be some action by the government specifically directed toward the plaintiff's property that has the effect of limiting the use of the property." When considering whether a de facto taking has occurred, we must consider "the form, intensity, and the deliberateness of the government actions" in the aggregate. [*Dorman v Twp of Clinton*, 269 Mich App 638, 645; 714 NW2d 350 (2006)]

A governmental entity need not physically take the property of a citizen for an action in inverse condemnation to lie. "Any injury to the property of an individual which deprives the owner of the ordinary use of it is equivalent to a taking, and entitles him to compensation. So a partial destruction or diminution of value of property by an act of government, which directly and not merely incidentally affects it, is to that extent an appropriation." *Peterman v State Dept of Nat Res*, 446 Mich 177, 190; 521 NW2d 499 (1994). An inverse condemnation action is one instituted by a private property owner whose property, while not formally taken for public use, has been damaged by a public improvement undertaking or other public activity. *Merkur Steel Supply Inc v City of Detroit*, 261 Mich App 116, 129; 680 NW2d 485 (2004) (citation omitted).

The action is thus against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted. *Id.*

In both docket no. 340458 and docket no. 340890, all plaintiffs, collectively, alleged in their complaints that defendants specifically decided to send water they knew or had reason to know was unsafe through the pipelines and into plaintiffs' homes and businesses. Plaintiffs detailed the specific actions and inactions of defendants which resulted in the contaminated water flowing into their homes as well as the information available to defendants regarding the safety of the water at various points. Plaintiffs referenced Article 10 § 2 of the Michigan Constitution's requirement that "'[p ]rivate property shall not be taken for public use without just compensation." They also asserted that the actions and inactions of the state constitutes a de facto taking of private property without just compensation because the actions of the state were unreasonable, unwarranted, and reckless. Plaintiffs claimed that the defendants took affirmative actions that directly targeted their properties and they sustained property damage, including irreparably damaged service line pipes, loss of use and enjoyment of their property, and substantial loss in the value of their properties.

The decision to have plaintiffs' water source be the contaminated Flint River was clearly an affirmative act by defendants specifically directed towards plaintiffs' properties. See, e.g., *Wiggins v City of Burton*, 291 Mich App 532, 572; 805 NW2d 517 (2011) (construction and installation of a drain on the plaintiff's property to address surface water was an affirmative act by the City or its agents, specifically directed toward the plaintiffs property). The City was under emergency management at the time the decision was made and, as we have already determined, these defendants were officers or employees of the state. The decision to change the water source was made by defendants, without the input of plaintiffs, and defendants affirmatively acted to impose their decision on plaintiffs. And, plaintiffs alleged that the emergency manager defendants and other defendants vetoed and otherwise rejected the City of Flint's decision/request to return to the Detroit water system when it was suspected that the water was contaminated. The change or refusal to change the water source that flows through one's pipes and into one's home is specifically directed toward those properties receiving the water. Looking at the form, intensity, and the deliberateness of the government actions in the aggregate (*Dorman v Twp of Clinton*, 269 Mich App at 645), plaintiffs properly plead a claim of inverse condemnation in both cases.[1]

---

[1] Defendants assert that only seven of the plaintiffs specifically asserted that they owned property that was damaged. However, it is not difficult to understand that if a home is in an area publically known to not have had safe, potable water, the value of the home is affected, as is the owner's use and enjoyment of their property.

B. Statutory Notice

MCL 600.6431 provides as follows:

(1) No claim may be maintained against the state unless the claimant, within 1 year after such claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against the state or any of its departments, commissions, boards, institutions, arms or agencies, stating the time when and the place where such claim arose and in detail the nature of the same and of the items of damage alleged or claimed to have been sustained, which claim or notice shall be signed and verified by the claimant before an officer authorized to administer oaths.

(2) Such claim or notice shall designate any department, commission, board, institution, arm or agency of the state involved in connection with such claim, and a copy of such claim or notice shall be furnished to the clerk at the time of the filing of the original for transmittal to the attorney general and to each of the departments, commissions, boards, institutions, arms or agencies designated.

(3) In all actions for property damage or personal injuries, claimant shall file with the clerk of the court of claims a notice of intention to file a claim or the claim itself within 6 months following the happening of the event giving rise to the cause of action.

The statute does not provide further guidance on what is meant by "the happening of the event giving rise to the cause of action." In *Beasley v State*, 483 Mich 1025, 1028; 765 NW2d 608 (2009), however, our Supreme Court found the statutory language clear and clarified that, "[s]ubsections 1 and 3 [of MCL 600.6431] together provide that in all actions for personal injuries, "[n]o claim may be maintained against the state" unless the claimant files the required notice of the claim or the claim itself within 6 months of the accrual of the claim." A claim accrues, for purposes of MCL 600.6431, only when suit may be maintained thereon. *Cooke Contracting Co v State*, 55 Mich App 336, 338; 222 NW2d 231 (1974). "The time of 'taking' in an inverse condemnation action is not necessarily coincidental with the time plaintiff's cause of action accrues. *Hart v City of Detroit*, 416 Mich 488, 503–04; 331 NW2d 438 (1982). This is because it is common for such actions to involve a continuous wrong by the condemnor rather than a single act. *Id*. While a claimant's knowledge of each element of a cause of action is not necessary for claim to have accrued, a claim does not accrue until each element of the cause of action, including some form of damages, actually exists. *Mays*, 323 Mich App at 29.

"[P]laintiffs must adhere to the conditions precedent in MCL 600.6431(1) to successfully expose the defendant state agencies to liability." *Fairley v Dep't of Corr*, 497 Mich 290, 298; 871 NW2d 129 (2015). A failure to comply with the notice verification requirements of MCL 600.6431 provides a complete defense in an action against the state or one of its departments. *Id*. at 292. This is so even if the claim alleges a state constitutional tort. *Rusha v Dept of Corr*, 307 Mich App 300, 304; 859 NW2d 735 (2014). An exception, however, to the enforcement of a statutory notice requirement exists where it can be demonstrated that it is "so harsh and

unreasonable in [it's] consequences that [it] effectively divest plaintiffs of the access to the courts intended by the grant of the substantive right." *Id*. at 311 (citation omitted).

Notices for some plaintiffs in docket no. 340458 were filed as early as April 4, 2016. Pursuant to MCL 600.6431(3), then, "the happening of the event giving rise to the cause of action" (here, inverse condemnation) must have after occurred after October 4, 2015. With respect to their inverse condemnation claim, plaintiffs alleged that their plumbing, water heaters, and service lines were damaged due to contaminated water repeatedly flowing through them. They also alleged that Governor Snyder belatedly and publicly recognized that Flint residents were potentially exposed to unsafe levels of lead in October 2015 and once the crisis became public, property values plummeted and they experienced a substantial loss in the value of their homes.

The damage to the plumbing, water heaters, and service lines, along with the devaluation of their homes, likely did not occur when the contaminated water first began flowing through the pipes. The property damages occurred gradually, such that "the event giving rise to the cause of action was not readily apparent at the time of its happening." *Mays*, 323 Mich App at 35. The property damages were not immediately occurring or immediately readily apparent because the evidence of injury was concealed in the water supply infrastructure buried beneath Flint. *Id*. at 35-36. And, according to plaintiffs' complaint, there was no public acknowledgement of the water issues until October 2015; rather, plaintiffs were continually publically reassured by defendants that the water was safe. "Plaintiffs' claim for lack of marketability did not accrue until the values of their homes decreased, which would have occurred when the water crisis became public and marketability of property in Flint became significantly impaired in October 2015." *Mays*, 323 Mich App at 29. More importantly, "accepting defendants' position would require a finding that plaintiffs should have filed suit or provided notice at a time when the state itself claims it had no reason to know that the Flint River water was contaminated." *Mays*, 323 Mich App at 27–28. Given the above, it is unclear when plaintiffs knew or should have known of their property damage claims. Plaintiffs filed notices within six months of the public acknowledgement the water was unsafe. Thus, there are genuine issues of material fact with respect to when the property damage of irreparably damaged service line pipes and substantial loss in the value of their properties occurred and when plaintiffs knew or should have known of the injuries.

In addition, as set forth in *Mays*, *supra*, application of the harsh-and-unreasonable-consequences exception to a notice requirement is clearly supported here. *Id*. at 35. In *Rusha v Dept of Corr*, 307 Mich App 300, 311; 859 NW2d 735 (2014) this Court recognized an exception to the enforcement of procedural requirements (specifically statutes of limitations and notice provisions) lies "where it can be demonstrated that the procedural requirement is so harsh and unreasonable in its consequences that it effectively divests plaintiffs of the access to the courts intended by the grant of the substantive right." (citation omitted). As in *Mays, supra*, plaintiffs here alleged "affirmative acts undertaken by numerous state actors, including named defendants, between April 25, 2014, and October 2015 to conceal both the fact that the Flint River water was contaminated and hazardous and the occurrence of any event that would trigger the running of the six-month notice period." *Id*. at 36. As the *Mays* Court recognized, "[u]nder these unique circumstances, to file statutory notice within six months of the date of the water source switch would have required far more than ordinary knowledge and diligence on the part

of plaintiffs and their counsel. It would have required knowledge that defendants themselves claim not to have possessed at the time plaintiffs' causes of action accrued." *Id*.

Because there are material questions of fact concerning when the damage of irreparably damaged service line pipes and substantial loss in the value of plaintiffs' properties occurred and when plaintiffs knew or should have known of the injuries and because the harsh-and-unreasonable-consequences exception to the notice requirement applies, these claims, in both cases, are thus not time-barred.

With respect to plaintiffs' claim of property damage in the form of loss of use and enjoyment of their property, in docket no. 340458, plaintiffs stated in their complaint that "[w]ithin days of the introduction of Flint River water into the Flint pipelines, the noxious sight, taste, and smell of water flowing from the taps was apparent." The Flint River water began flowing into their homes on April 25, 2014. Clearly, then, plaintiffs' use and enjoyment of their homes was affected on April 25, 2104, and apparent to them within days of that date. Plaintiffs also alleged that they were placed on "boil water" advisory in January 2015 and a lead advisory warning was issued to them in September 2015. At the latest, then, their use and enjoyment of their homes was affected in September 2015, which falls outside the statutory notice period. This claim, then, would be time barred by the application of MCL 600.6431(3) due to their failure to comply with the notice requirement set forth therein.

In docket no. 340890, only two notices of intent were filed with respect to two of the plaintiffs, and they were filed on June 10, 2016. The first filing for the other plaintiffs was the December 13, 2016 complaint. Plaintiffs' claim of property damage in the form of loss of use and enjoyment of their property are barred for the same reasons discussed in docket no. 340458. Though the dates of notice in this case are later than those in docket no. 340458, it still remains unclear when the damage of irreparably damaged service line pipes and substantial loss in the value of plaintiffs' properties occurred and when plaintiffs knew or should have known of the injuries. Because of these material questions of fact and because the harsh-and-unreasonable-consequences exception to the notice requirement applies, the Court of Claims appropriately determined that summary disposition in favor of defendants on these issues was improper in docket no. 340890.

### III. Violations of Due Process

Plaintiffs cross-appeal the Court of Claims' rulings that they did not satisfy the notice of intent requirements of MCL 600.6431(3) concerning their right to due process arising from a state-created danger and the bodily integrity doctrine. We agree that the Court of Claims erred with respect to these claims.

As previously indicated, some plaintiffs in this matter (docket nos. 340275 and 340890) filed notices of intent on June 10, 2016. The first filing for the other plaintiffs was the December 13, 2016 complaint. Pursuant to MCL 600.6431(3), then, "the happening of the event giving rise to the cause of action" (here, due process claims) must have after occurred after December 10, 2016 and June 13, 2016, respectively. With respect to plaintiffs' claims of violation of due process based on a state created danger plaintiffs alleged that defendants used their unlimited power, which subsumed the power of the local government of the City of Flint, to use the Flint

-14-

River, for which there was no fee, as water source in furtherance of a fiscally motivated plan. Plaintiffs alleged that defendants disconnected their water from a safe water source and engaged in coordinated, systematic misrepresentations that the Flint River water was safe and fit for its intended use despite actual knowledge that this was false, and perpetuating the damages caused to the plaintiffs by manipulating and obfuscating data possessed by defendants. Plaintiffs asserted that they justifiably relied upon the misrepresentations of defendants to their detriment, causing them to suffer irreversible personal injuries and property damages.

Plaintiffs also claimed that defendants violated their due process rights to bodily integrity:

> The systematic and coordinated actions of the Defendants' continuously, fraudulently misrepresenting and concealing the dangers or the toxic unsafe Flint River despite having knowledge to the contrary that there already existed a serious and imminent health crisis created by the switch from DWSD to the unsafe, untreated, and toxic free Flint River which destabilized the metallurgically intact Flint water infrastructure, and hereafter exposed and re-exposed the Flint residents and Plaintiffs to lead and other toxins, which irrevocably damaged Plaintiffs bodies and property; and whose misrepresentations were justifiably relied upon by the Plaintiffs to their detriment and which violated and infringed on their right to bodily integrity.

Plaintiffs generally alleged that soon after the switch to Flint River water on April 25, 2014, residents began to complain about the odor and discoloration of their water. However, they were reassured by defendants that the water was safe. Plaintiffs alleged that defendants created and then perpetually concealed the ongoing exposure and re-exposure to contaminated water, with deliberate indifference to the known risks of harm and that the exposure caused harm to plaintiffs. They alleged that defendants fraudulently and continuously misrepresented and concealed that the Flint River was unsafe and was known to be unsafe and failed to take adequate steps to remediate the harm they created, which was justifiably relied upon by plaintiffs to their detriment. The Court of Claims, however, found that the happening of the event give rise to plaintiffs' personal injuries (i.e., plaintiffs' personal injury claims accrued) occurred on April 25, 2014, when the water source was switched, such that their constitutional personal injury claims were time-barred.

As previously indicated, a claimant's knowledge of each element of a cause of action is not necessary for claim to have accrued, but a claim does not accrue until each element of the cause of action, including some form of damages, actually exists. *Mays*, 323 Mich App at 29. It is not clear from plaintiffs' complaint when, exactly, each plaintiff's damages in the form of personal injuries occurred. While the *exposure* of plaintiffs to contaminated water began on April 25, 2014, there is no indication that plaintiffs immediately suffered personal injury *damages* on that date. Rather, as with damage to plaintiffs' properties, the personal injury damages likely took time to develop and become known. And, as many of those exposed to the contaminate water were children, whether any of the children suffered personal injury damages (or whether their own children would) may not be known for many years. Lacking an exact date when the personal injury damages to each plaintiff occurred, summary disposition was not appropriate in favor of defendants on these claims.

-15-

Moreover, as also previously indicated, an exception to the enforcement of a statutory notice requirement exists where it can be demonstrated that it is "so harsh and unreasonable in [it's] consequences that [it] effectively divest plaintiffs of the access to the courts intended by the grant of the substantive right." *Id*. at 311 (citation omitted). This case presents the exact type of claim to which the harsh and unreasonable consequences exception was intended to apply. The state defendants undertook to continually assure the public that the water was safe, while at the same time taking actions to ensure that its own agencies, agents, officials, servants and employees were not exposed to the contaminated water (plaintiffs alleged that as early as January 2015, the state provided purified water coolers to the Flint State offices). Due to the reassurances by the state, any personal injury damages that were suffered by plaintiffs could have been believed by plaintiffs to have occurred for reasons other than the switch to Flint River water. Plaintiffs cannot be charged with having or obtaining conclusive knowledge that contaminated water caused any personal injury damages when any information suggesting that the water may not be safe was contradicted by the state defendants at every turn, until October 2015, and they did not declare a state of emergency until January 5, 2016. It would be a harsh and unreasonable consequence to deny plaintiffs the access to the courts intended by constitutional due process if we were to require them to have filed suit or provided notice at a time "when the state itself claims it had no reason to know that the Flint River water was contaminated." *Mays*, 323 Mich App at 27–28. We therefore reverse the Court of Claims dismissal of plaintiffs' claims of constitutional due process claims.

Finally, although we ordinarily do not address issues not raised on appeal (*Tingley v Kortz*, 262 Mich App 583, 588; 688 NW2d 291 (2004)), this Court possesses the discretion to review a legal issue not raised by the parties. See *Mack v Detroit*, 467 Mich 186, 206–209; 649 NW2d 47 (2002). Thus, though the plaintiffs in docket no. 340458 did not assert that on appeal that the Court of Claims erred in dismissing their constitutional claim for violation of bodily integrity, we reverse that decision of the Court of Claims for the same reasons we reverse the Court of Claims decision on that issue in docket no. 340890.[2]

Conclusion

In docket no. 340017, we reverse the Court of Claims dismissal of plaintiffs' claims against the emergency manager defendants. In docket no. 340275, we reverse the Court of Claims dismissal of plaintiffs' claims against the emergency manager defendants. In docket no. 340458, we affirm the Court of Claims dismissal of plaintiffs' claim for inverse condemnation with respect to plaintiffs' claim of loss of use and enjoyment of their property, affirm the Court of Claims denial of summary disposition in defendants' favor with respect to plaintiffs' inverse condemnation claim based upon property damage of irreparably damaged service line pipes and substantial loss in the value of their properties, and reverse the Court of Claims dismissal of plaintiffs' personal injury claims based on constitutional violations of their right to due process

---

[2] Plaintiffs alleged in their complaint in docket no. 340890 that they suffered personal injury damages including skin rashes, hair loss, bacterial infections, liver damage, other medical issues, "unknown physical injuries," and a death that occurred on January 15, 2016.

based on constitutional claim for violation of bodily integrity. In docket no. 340890, we affirm the Court of Claims dismissal of plaintiffs' claim for inverse condemnation with respect to plaintiffs' claim of loss of use and enjoyment of their property, affirm the Court of Claims denial of summary disposition in defendants' favor with respect to plaintiffs' inverse condemnation claim based upon property damage of irreparably damaged service line pipes and substantial loss in the value of their properties, and reverse the Court of Claims dismissal of plaintiffs' personal injury claims based on constitutional violations of their right to due process based on a state created danger and right to due process based on the bodily integrity doctrine. We remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro