# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM SCOTT KINCAID, ERAINA POOLE,
GEORGE POOLE, and MARY BELL,

        Plaintiffs-Appellants,

v

CITY OF FLINT,
a municipal corporation.

        Defendant-Appellee.

FOR PUBLICATION
June 11, 2015
9:10 a.m.

No. 318906
Genesee Circuit Court
LC No. 12-098490-CZ

Before: Donofrio, P.J., and Borrello and Stephens, JJ.

Stephens, J.

Plaintiffs, all residents of the defendant, appeal as of right the order of the circuit court granting defendant's motion for summary disposition and denying plaintiffs' motion to amend their complaint. We reverse and remand.

## I. BACKGROUND

On August 15, 2011, the defendant's finance director, Michael Townsend sent a notice of a proposed 3.5% water and sewerage rate increase to be effective September 16, 2011, to the city council and mayor. The increase was proposed to meet a projected fiscal year deficit in the water fund of $14,789,666 as well as a sewer fund deficit of $8,078,917. Council adopted the proposal and the mayor signed it.

Shortly thereafter defendant was declared to be in a state of financial emergency.[1] On November 28, 2011, Governor Rick Snyder appointed Michael Brown as the Emergency Manager (EM) of defendant under the Emergency Manager Law, Public Act 4 of 2011.[2] On

---

[1] MCL 141.1545, former MCL 141.1214 lists the four instances in which a financial emergency exists.

[2] Former MCL 141.1501 *et seq.*; At the time, former MCL 141.1515(4) provided the Governor with the authority to appoint an emergency manager:

May 5, 2012, after being informed by newly appointed finance director Gerald Ambrose of the financial disarray of the water and sewer funds for defendant, EM Brown created Emergency Order No. 31. Order No. 31 ratified and confirmed the water and sewer rates implemented under Townsend on September 16, 2011, and additionally raised water and sewer rates, 12.5% and 45%, respectively.

After the Emergency Order by Brown, plaintiffs in this suit filed a complaint seeking this Court's original jurisdiction pursuant to Const 1963, art 9, §§ 31-32. The claim of error in that case was that defendant violated the Headlee Amendment[3]. This Court dismissed plaintiffs' claims without a hearing, finding that the rate increases from September of 2011 and those set to take place in July of 2012 were "revisions of existing user fees that do not implicate the Headlee Amendment." Plaintiffs' claims not relating to the Headlee Amendment were dismissed for lack of original jurisdiction. *Kincaid v Flint*, unpublished order of the Court of Appeals, entered June 29, 2012 (Docket No. 310221), lv den 493 Mich 871 (2012).

After the case before this Court was dismissed, plaintiff filed the instant action. The essence of the case was a claim that the rate increases in September of 2011 were made contrary to city ordinances: § 46-52.1,and § 46-57 and that the defendant had illegally pooled the funds collected for the water and sewer fund and used them to pay general obligations not related to sewer or water expenses. Plaintiffs requested that the trial court certify a class action suit against defendant for all sewer and water customers of defendant, declare that the rate increases were an illegal tax under the Headlee Amendment, and cease the co-mingling funds. Additionally, plaintiffs requested monetary relief in the form of a refund of the illegally collected rates and for damages caused to defendant's residents that were left without water and sewer service.

In lieu of filing an answer, defendant moved the trial court to grant it summary disposition pursuant to MCR 2.116(C) (6), (7), and (8). However, before defendant's motion for summary disposition was heard, plaintiffs moved the trial court for leave to amend their complaint asking for leave to allege a violation of MCL 123.131(2), (3).[4]

---

> Upon the confirmation of a finding of a financial emergency, the governor shall declare the local government in receivership and shall appoint an emergency manager to act for and in the place and stead of the governing body and the office of chief administrative officer of the local government.

[3] Specifically, the Headlee Amendment to the state constitution provides standing to "[a]ny taxpayer of the state" to bring suit in this Court to enforce the tax provisions of §§ 25 to 31.

[4] MCL 123.141(2), (3), states:

> (2) The price charged by the city to its customers shall be at a rate which is based on the actual cost of service as determined under the utility basis of rate-making. This subsection shall not remove any minimum or maximum limits imposed contractually between the city and its wholesale customers during the remaining life of the contract. This subsection shall not apply to a water system

Defendant responded to plaintiffs' motion to amend their complaint by arguing that it should be denied as futile. On February 15, 2013, the trial court heard the two outstanding motions. On June 21, 2013, the trial court entered an opinion and order granting summary disposition in favor of defendant. On July 12, 2013, plaintiffs moved the trial court to reconsider its decision to which the court entered an order permitting defendant to respond to plaintiffs' motion for reconsideration. The court denied the motion on October 14, 2013. Plaintiffs now appeal the order granting defendant summary disposition.

During the pendency of this case in the trial court, Public Act 4 of 2011 was rejected by a majority of the electorate causing its repeal.[5] One month later on December 26, 2012, the Legislature approved the Local Financial Stability and Choice Act, Public Act 436 of 2012,[6] effective March 28, 2013.[7] Many of the provisions of Public Act 436 of 2012 mirror those of Public Act 4 of 2011.

## II. STANDARD OF REVIEW

The trial court ordered summary disposition under (C)(8) and the parties base their arguments on that subsection before this Court, but our review of the record shows that the trial court went beyond the pleadings in making its decision as did both parties in making their arguments. Plaintiffs' response to defendant's motion for summary disposition relied on 16 exhibits. Plaintiffs also moved for summary disposition themselves and cited exhibits outside the pleadings. The analysis of this case therefore will be done under MCR 2.116(C)(10). See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012)

---

that is not a contractual customer of another water department and that serves less than 1% of the population of the state. This subsection shall take effect with the first change in wholesale or retail rate by the city or its contractual customers following the effective date of this subsection. Any city that has not adjusted rates in conformity with this subsection by April 1, 1982 shall include in the next ensuing rate period an adjustment to increase or decrease rates to wholesale or retail customers, so that each class of customer pays rates which will yield the same estimated amount of revenue as if the rate adjustment had been retroactive to April 1, 1982. A city that is subject to section 5e of Act No. 279 of the Public Acts of 1909, being section 117.5e of the Michigan Compiled Laws, shall begin proceedings to determine rate changes pursuant to section 5e(b) of Act No. 279 of the Public Acts of 1909, being section 117.5e of the Michigan Compiled Laws.

(3) The retail rate charged to the inhabitants of a city, village, township, or authority which is a contractual customer as provided by subsection (2) shall not exceed the actual cost of providing the service.

[5] The state board of canvassers certified the vote on November 26, 2012. Public Act 72 of 1990 came back into effect while the referendum on Public Act 4 of 2011 was pending.

[6] MCL 141.1541 *et seq*.

[7] Public Act 436 of 2012 repealed Public Act 72 of 1990, effective March 28, 2013.

("[B]ecause the trial court considered documentary evidence beyond the pleadings, we construe the motion as having been granted pursuant to MCR 2.116(C)(10).").

"This Court reviews decisions on motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law." *Alcona Co v Wolverine Environmental Prod, Inc*, 233 Mich App 238, 245; 590 NW2d 586 (1998), lv den 461 Mich 854 (1999). A motion for summary disposition pursuant to MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Assoc*, 491 Mich 200, 206; 815 NW2d 412 (2012), reh den 815 NW2d 491 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id*. A party opposing a motion made pursuant to MCR 2.116(C)(10) has "the burden of showing that a genuine issue of disputed fact exists." *Major v Auto Club Ins Assoc*, 185 Mich App 437, 440; 462 NW2d 771 (1990), lv den 437 Mich 923 (1991) (citations omitted). The opposing party may not rest upon mere allegations or denial in the pleadings, but must, by affidavit or other documentary evidence, set forth specific facts showing that there is a genuine issue for trial. *Id*. (citations omitted).

This Court also reviews issues of statutory interpretation de novo. *Allen v Bloomfield Hills Sch Dist,* 281 Mich App 49, 52; 760 NW2d 811 (2008).

> When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. The first step when interpreting a statute is to examine its plain language, which provides the most reliable evidence of [legislative] intent. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. When an ambiguity does indeed exist, we may go beyond the statutory text to ascertain legislative intent. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. [*People v. Carrier*, ___ Mich App ___; ___ NW2d ___ (2015); slip op at 6-7 (citations and quotation marks omitted).].

## III. CLAIMS OF ERROR

Plaintiffs' claims of error are two: that water and sewer rate increases that occurred under Townsend in September 2011were not authorized by Flint Ordinances and that EM Brown did not have the authority to ratify Townsend's unauthorized increases and then further increase water and sewer rates in violation of the same ordinances.

## A. ORDINANCE VIOLATIONS

The City of Flint Ordinances that plaintiffs claim were violated are:

Ordinance 46-52.1

(a)     Every year the Director of Finance shall calculate and transmit on or before April 15, to the Mayor and City Council the new water rate schedules with a complete itemization of water system costs for all classes of customers as given in § 46-52, for the purpose of calculating all bills for the forthcoming 12 months beginning July 1 of that year.  The new water rate schedules shall be published at least 30 days prior to the date of implementation.

(b)     Water rates shall be reviewed annually and the water percentage index (WRI) as applied to the water rate schedules shall be limited to an adjustment of 8% in any year unless:

(1)     Such an adjustment is necessary to provide for all costs of operation, maintenance, replacement and debt service of the water supply system; or

(2)     Such an adjustment is necessary to comply with applicable provisions of the city's water supply revenue bond resolutions or ordinances.

and,

Ordinance 46-57.1

Every year the Director of Finance shall calculate and transmit on or before April 15, to the Mayor and City Council the new sewage rate schedules with a complete itemization of sewage system costs for all classes of customers as given in § 46-57, for the purpose of calculating all bills for the forthcoming 12 months beginning July 1 of that year.  The new water rate schedules shall be published at least 30 days prior to the date of implementation.

Plaintiffs argue that the rate increases of September 2011 and those imposed by the EM failed to meet the notice and effective date requirements of the ordinances and exceeded the percentage of increase allowed under the ordinances. We agree in part.

The September 2011 35% water rate increase was in violation of Flint Ordinance 46-52.1 because it was not published and noticed at least 30 days prior to its implementation and went into effect almost immediately in September 2011 instead of being implemented over twelve months beginning on July 1 of the next fiscal year.  The sewer rate increases were invalid for the same reasons under Ordinance 46-57.1.  The sewer rates were not published and noticed 30 days prior to their implementation and were implemented soon after the finance director's recommendation instead of on July 1 of the next fiscal year.

Plaintiffs' argument that the increases also violated Ordinance 46-52.1 by increasing the water rates above 8% is not supported by the ordinance language.  Ordinance 46-52.1 envisions that water rate increases be limited to an adjustment of 8%, but allows for uncapped increases in the event "the adjustment is necessary to provide for all costs of operation, maintenance,

replacement and debt service of the water supply system' or . . . to comply with applicable provisions of the city's water supply revenue bond resolutions and ordinances." The defendant's then finance director, Townsend, sent an August 2011 letter to Mayor Walling and City Council, providing justification for the amount of the increase. In that letter, Townsend stated that the water fund was operating at a $3.21 million loss and that the city was not meeting its state bond requirements to operate with revenues greater than 125% of the amount of debt service of the bonds. Townsend explained that the rate increases would help cover the rate increases the city paid to Detroit and the Drinking Water Revolving Fund Bonds. This Court has no basis to find those statements invalid. While the notice, publication and implementation of the water and sewer rate increases were not authorized, the percentage of increase for the rates was not a violation of the ordinances.

Plaintiffs challenge the EM's rate increases under Order No. 31 on the same basis as they challenged the September 2011 increases. However, EM Brown's water and sewer rate increases of 12.5% and 45% respectively, did not violate Flint Ordinances 46-52.1 and 46-57.1. On May 5, 2012, EM Brown published notice of the increases and that they were to be effective July 1, 2012. The Order complied with the notice, publication and implementation provisions of 46-52.1 and 46-57.1. Plaintiffs again argue that any increase in water rates over 8% is not authorized under 46-52.1, but as discussed above, the language of the ordinance does not support that argument. The language of Order No. 31 established both of the excepted instances in 46-52.1 that allow for an increase in water rates greater than 8%. The Order explained that defendant was required under MCL 141.121[8] to set sewer rates that were sufficient to cover the costs of operating the water and sewer systems and that Townsend's increase was insufficient to

---

[8] MCL 141.121, the Revenue Bond Act of 1933, provides in pertinent part:

(1) Rates for services furnished by a public improvement shall be fixed before the issuance of the bonds. The rates shall be sufficient to provide for all the following:

(a) The payment of the expenses of administration and operation and the expenses for the maintenance of the public improvement as may be necessary to preserve the public improvement in good repair and working order.

(b) The payment of the interest on and the principal of bonds payable from the public improvements when the bonds become due and payable.

(c) The creation of any reserve for the bonds as required in the ordinance.

(d) Other expenditures and funds for the public improvement as the ordinance may require.

(2) The rates shall be fixed and revised by the governing body of the borrower so as to produce the amount described in subsection (1). The borrower shall covenant and agree in the ordinance authorizing the issuance of the bonds and on the face of each bond to maintain at all times the rates for services furnished by the public improvement sufficient to provide for the amount described in subsection (1). Rates pledged for the payment of bonds that are fixed and established pursuant to a contract or lease shall not be subject to revision or change, except in the manner provided in the lease or contract.

meet defendant's obligation under state law. The Order stated that additional increases were necessary "to cover the costs of operating the water and sewer systems and pay outstanding bonded indebtedness on the water system."

## B. RATIFICATION AUTHORITY OF THE EMERGENCY MANAGER

EM Brown not only increased water and sewer rates with the enactment of Order No. 31, but also purported to expressly ratify and confirm the September 16, 2011 rate increases. The issue of first impression for this Court is whether EM Brown was granted the authority to ratify the unauthorized acts of another public official. We conclude that the Legislature did not delegate the power to ratify to an emergency manager.

The EM is a creature of the Legislature with only the power and authority to do what is granted by statute. EM Brown derived his authority from the former Emergency Manager Law, PA 4 of 2011.[9] That authority was not as broad as defendant argues. We do not agree with defendant that Public Act 436 of 2012, the successor statute to PA 4 of 2011, ratified all the actions of the EM taken under PA 4. MCL 141.1570(1)(a)-(e), states that "[a]ll of the following actions that occurred under the former 2011 PA 4" became effective under 2012 PA 436:

> (a) A determination by the state treasurer or superintendent of public instruction pursuant to a preliminary review of the existence of probable financial stress or a serious financial problem in a local government.

> (b) The appointment of a review team.

> (c) The findings and conclusion contained in a review team report submitted to the governor.

> (d) A determination by the governor of a financial emergency in a local government.

> (e) A confirmation by the governor of a financial emergency in a local government.

The actions taken by the state treasurer, the appointed review team and the governor remain effective and were not required to be re-approved with 2012 PA 436. Notably, actions taken by the EM are not included.

We also reject defendant's argument that an act of the EM is an act of the governor and that the EM derives power to ratify from the governor. Former MCL 141.1519(1)(dd) and (ee) state that an EM's authority is limited to the local level. An EM "[e]xercise[s] solely, for and on behalf of the local government," and "exercise[s] any power or authority of any officer, employee, department, board, commission, or other similar entity of the local government,

---

[9] Former MCL 141.1501 *et seq*.

whether elected or appointed, relating to the operation of the local government." MCL 141.1519(1)(dd), (ee). Thus, the EM acts in place of numerous persons, but they are all local government officials. Former 2011 PA 4[10] and 2012 PA 436[11] each provides that the governor may delegate his duties to the treasurer. Notably, there is no similar provision regarding the delegation of any authority to the EM. Rather, the EM serves at the pleasure of the governor.[12]

The EM's responsibilities and authority under former 2011 PA 4 are listed in former sections MCL 141.1515 through MCL 141.1530. Those provisions are similarly stated in sections MCL 141.1549 through MCL 141.1564 under 2012 PA 436. Of all the powers granted to the EM, ratification is not one of them. Ratification, in both the former 2011 PA 4 and 2012 PA 436, is explicitly granted to the actions of certain persons and entities. Under the former 2011 PA 4, "[a]ll proceedings and actions taken by the governor, the state treasurer, or a review team . . . are ratified and are enforceable as if the proceedings and actions were taken under this act, and a consent agreement entered into . . . is ratified and is binding and enforceable." Former MCL 141.1512(6). 2012 PA 436 contains nearly identical language:

> All proceedings and actions taken by the governor, the state treasurer, the superintendent of public instruction, the local emergency financial assistance loan board, or a review team under former 2011 PA 4, . . . are ratified and are enforceable as if the proceedings and actions were taken under this act, and a consent agreement entered into under former 2011 PA 4, . . . that was in effect immediately prior to the effective date of this act is ratified and is binding and enforceable under this act. [MCL 141.1544(6).]

The clear difference between 2011 PA 4 and 2012 PA 436 is that PA 436 adds "the superintendent of public instruction" and "the local emergency financial assistance loan board." Neither PA 4 nor PA 436 ratifies actions taken by the EM. Further, the EM's power to supersede local government authority does not extend to the state officers and entities listed above.[13] Consequently, the Legislature did not grant the EM the power of ratification, nor did the actions of the EM taken under 2011 PA 4 survive the electors' referendum of that Act.

Absent the power of ratification, defendant urges this Court to look elsewhere for the EM's authority to approve the unauthorized 2011 water and sewer rate increases. Defendant

---

[10] Former MCL 141.1515(10).

[11] MCL 141.1549(8).

[12] Former MCL 141.1515(5)(d); MCL 141.1549(3)(d).

[13] The EM's power is superior to and supersedes that of local government officials and entities. Former MCL 141.1519(1)(ee); MCL 141.1552(1)(ee). The EM does not usurp the authority of the superintendent of public instruction. See e.g. MCL 141.1554(c). The EM is not an appointed member of the financial assistance loan board or review team. Former MCL 141.1212; MCL 141.1544.

argues that the additional powers granted to an emergency manager in former MCL 141.1519[14] authorized the EM to raise water and sewer rates notwithstanding the ordinances. Under that section,

> An emergency manager may take 1 or more of the following additional actions with respect to a local government which is in receivership, notwithstanding any charter provision to the contrary:
>
> (a) Analyze factors and circumstances contributing to the financial emergency of the local government and initiate steps to correct the condition.

We are not persuaded by this argument. MCL 141.1519 applies in the instance where the EM, after having analyzed the factors and circumstances contributing to the financial emergency, *initiates* some action to alleviate the emergency. In other words, some affirmative act is required of the EM. "The word 'initiate' is a synonym of the word 'commence.' " *Fast Air, Inc. v. Knight*, 235 Mich App 541, 544; 599 NW2d 489 (1999) citing *Black's Law Dictionary* (5th ed). In turn, the plain and ordinary meaning of the word commence is "to begin; start," *The American Heritage Dictionary* (4th Ed 2006) and "begin" is defined as "to take the first step in performing an action." *Id.*[15] MCL 141.1519, then in effect, supported the 12.5% water and 45% sewer rates initiated by the EM after his appointment. Those increases were initiated after the EM was provided with information from his appointed finance director Gerald Ambrose of the operating losses of both the water and sewer systems and were implemented to correct those conditions. Although the EM had the authority to institute the change in rates notwithstanding any charter provision to the contrary under the former MCL 141.1519(1)(a), as discussed above, the increases complied with the notice, publication and implementation guidelines of city ordinances 46-52.1 and 46-57.1. MCL 141.1519(1)(a) however, does not support the action taken by the EM to expressly ratify and confirm the increases recommended by Townsend. In that instance, the EM did not "initiate" the steps to correct the condition by an affirmative act, but rather approved the steps already taken by someone else. Because the EM did not initiate those increases, MCL 141.1519(1)(a) does not apply.

In light of our analysis, we conclude that defendant violated its own ordinances, 46-52.1 and 46-57.1, by increasing water and sewer rates without first providing notice and publication to its residents thirty days prior and by not waiting to implement those rates until July 1 of the next fiscal year. We also conclude that Order No. 31 did not rectify the violations.

The trial court's grant of summary disposition to defendant was premised on its understanding of the EM's authority as broad, substantial and complete. Our decision today only highlights that authority for a closer look at the statutory boundaries of the EM's power.

---

[14] Now, MCL 141.1552.

[15] See *SBC v J.T. Crawford, Inc*, unpublished opinion per curiam of the Court of Appeals, issued November 27, 2007 (Docket No. 275334), p. 5.

Because we disagree with the trial court's conclusion that the EM had the authority to ratify, we reverse its order granting defendant summary disposition.

## C. COMINGLING OF FUNDS

Next, this Court must consider whether the trial court properly summarily disposed of plaintiffs' claims regarding comingling of funds. Plaintiffs assert that defendant placed water and sewer rate fees from customers into a pooled cash account with other funds, used the water and sewer funds to pay general obligations of defendant in violation of the Revenue Bond Act of 1933, and that this practice led to a deficit in the water and sewer funds which precipitated the increases by Townsend and EM Brown. Plaintiffs' arguments rely entirely on the motion being granted pursuant to MCR 2.116(C)(8). Indeed, plaintiffs maintain that the trial court should not have considered the affidavit of Pamela Hill, a certified public accountant and auditor of defendant's financial statements, nor held it against plaintiffs for not providing any evidence to the contrary, because subrule (C)(8) requires the trial court to disregard evidence outside the pleadings. However, as has been discussed, this motion was granted pursuant to MCR 2.116(C)(10).

Plaintiffs argue that defendant illegally comingled funds. We find no merit to this claim. A party opposing a motion made pursuant to MCR 2.116(C)(10) has "the burden of showing that a genuine issue of disputed fact exists." *Major*, 185 Mich App at 440. The opposing party may not rest upon mere allegations or denials in the pleadings, but must, by affidavit or other documentary evidence, set forth specific facts showing that there is a genuine issue for trial. *Id.* (citations omitted). The record reveals that defendant provided evidence, in the form of an affidavit from Hill who was hired to audit municipalities, that defendant's accounting system was entirely legal and was used by several other municipalities. Plaintiffs assert that Hill's affidavit only evidences the practice of comingling without establishing the legality of the practice. While the trial court only mentioned the Hill affidavit in its order granting summary dismissal, it also had before it plaintiffs' exhibits in support of their response to defendant's motion for summary disposition which included an affidavit from city treasurer Douglas Bingaman. Bingaman's affidavit stated that the water and sewer funds were in a single pooled cash account, but that funds which state law required to be maintained separately were excluded. Further, that the "account is intended to have each City fund, including the water and sewer funds, end up paying only its own operating and other expenses." Bingaman's affidavit is evidence that defendant was following state law in regards to pooled cash accounts. It was also evidence that the water and sewer funds were not being used to pay the general obligations of defendant. Hill's affidavit averred knowledge of legal accounting practices that only certain accounts were excluded from being maintained in single pooled cash accounts and that water and sewer funds were not excluded. Hill further averred that, "each participating fund's share of the pooled cash account is accounted for," meaning that the water and sewer funds were also accounted for. In response, plaintiffs provided no evidence of defendant's accounting system being illegal. This Court's decision in *Major*, 185 Mich App 437, quite plainly requires plaintiffs to provide *some* evidence that there is a disputed issue of fact. This, plaintiffs did not do. As such, the trial court was required to determine that there was no genuine issue of material fact for trial, and properly granted summary disposition on this issue. *Id.*

## III. MOTION TO AMEND

Plaintiffs last argue that it was error for the trial court to deny their request to amend their complaint. We agree.

"This Court reviews grants and denials of motions for leave to amend pleadings for an abuse of discretion." *Hakari v Ski Brule Inc*, 230 Mich App 352, 355; 584 NW2d 345 (1998). "There are circumstances where a trial court must decide a matter and there will be no single correct outcome; rather, there may be more than one reasonable and principled outcome. The trial court abuses its discretion when its decision falls outside this range of principled outcomes." *Pontiac Fire Fighters Union Local 376 v Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008).

"A party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party." MCR 2.118(A)(1). "Except as provided in subrule (A)(1), a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires." MCR 2.118(A)(2). "Because a court should freely grant leave to amend a complaint when justice so requires, a motion to amend should ordinarily be denied only for particularized reasons." *Wormsbacher v Phillip R Seaver Title Co*, 284 Mich App 1, 8; 772 NW2d 827 (2009), lv den 485 Mich 927 (2009). Those reasons include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice, or where amendment would be futile. *Miller v Chapman Contracting*, 477 Mich 102, 105; 730 NW2d 462 (2007). Further, MCR 2.116(I)(5) states that when the trial court summarily disposes of a case under subrules (C)(8), (C)(9), or (C)(10), the trial court "shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified."

The trial court's reason for denying plaintiffs' motion to amend their complaint was that the "proposed amended complaint is in conflict with this decision." The fact that an amended complaint would present issues at odds with the trial court's decision does not appear to be an accepted particularized reason. A court must specify its reasons for denying the motion; a failure to do so requires reversal, unless amendment would be futile. *Noyd v Claxton, Morgan, Flockhart & Vanliere,* 186 Mich.App 333, 340; 463 NW2d 268 (1990). Because we cannot discern on what basis the trial court denied plaintiffs' motion to amend their complaint, we remand this issue to the trial court. On remand, the trial court is to consider the additional claims in plaintiffs' proposed amended complaint and articulate its reasons for granting or denying the motion.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Pat M. Donofrio
/s/ Stephen L. Borrello