# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM SCOTT KINCAID, ERAINA POOLE,
GEORGE POOLE, and MARY B. BELL,

        Plaintiffs-Appellees,

v

CITY OF FLINT,

        Defendant-Appellant.

UNPUBLISHED
April 16, 2020

Nos. 337972; 337976
Genesee Circuit Court
LC No. 12-098490-CZ

ON REMAND

Before: BECKERING, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

This case, which involves a dispute over utility pricing in the City of Flint, returns to this Court on remand from the Supreme Court. *Kincaid v City of Flint*, 505 Mich 882 (2019) (*Kincaid V*). The Supreme Court has directed this Court to reconsider plaintiffs' unjust enrichment claim in light of *Wright v Genesee Co Bd of Comm'rs*, 504 Mich 410; 934 NW2d 805 (2019), and, "if necessary," to consider "the issues raised by the defendant" that this Court did not address in its initial review. In accordance with our Supreme Court's directive, we now consider defendant, the City of Flint's, argument that the trial court erred by denying summary disposition under MCR 2.116(C)(7) and MCR 2.116(C)(8). For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for further proceedings.

## I. BASIC FACTS

The underlying factual dispute was set forth by this Court in *Kincaid v City of Flint*, 311 Mich App 76, 77-80; 874 NW2d 193 (2015) (*Kincaid II*):

> On August 15, 2011, defendant's finance director, Michael Townsend, sent to the city council and mayor a notice of a proposed 35% water and sewer rate increase to be effective September 6, 2011. The increase was proposed to meet a projected fiscal year deficit in the sewer fund of $14,789,666 as well as a water fund deficit of $8,078,917. The city council adopted the proposal and the mayor signed it.

-1-

Shortly thereafter, defendant was declared to be in a state of financial emergency. On November 28, 2011, Governor Rick Snyder appointed Michael Brown as defendant's Emergency Manager (EM). On May 30, 2012, after he was informed by newly appointed finance director, Gerald Ambrose, of the financial disarray of defendant's water and sewer funds, EM Brown created Emergency Order No. 31. Order No. 31 ratified and confirmed the water and sewer rates implemented under former finance director Townsend on September 16, 2011, and additionally raised water and sewer rates, 12.5% and 45%, respectively, effective July 1, 2012.

After the emergency order by EM Brown, plaintiffs in this suit filed a complaint seeking this Court's original jurisdiction pursuant to Const. 1963, art. 9, §§ 31 and 32. The claim of error was that defendant violated the Headlee Amendment. This Court dismissed plaintiffs' claims without a hearing, finding that the rate increases from September 2011 and those set to take place in July 2012 were "revisions of existing user fees that do not implicate the Headlee Amendment." *Kincaid v Flint*, unpublished order of the Court of Appeals, entered June 29, 2012 (Docket No. 310221) [(*Kincaid I*)]. Plaintiffs' claims not relating to the Headlee Amendment were dismissed for lack of original jurisdiction. *Id.*

After the case before this Court was dismissed, plaintiff filed the instant action. The essence of this case is a claim that the rate increases in September 2011 were made contrary to defendant's Ordinances § 46–52.1 and § 46–57.1, and a claim that defendant had illegally pooled the [money] collected for the water and sewer funds and used [it] to pay general obligations not related to sewer or water expenses. Plaintiffs requested that the trial court certify a class action suit against defendant by all sewer and water customers of defendant, declare that the rate increases were an illegal tax under the Headlee Amendment, and order the commingling of funds to cease. Additionally, plaintiffs asked for monetary relief in the form of a refund of the illegally collected rates and for damages caused to defendant's residents who were left without water and sewer service.

In lieu of filing an answer, defendant moved the trial court to grant it summary disposition pursuant to MCR 2.116(C)(6), (7), and (8). However, before defendant's motion for summary disposition was heard, plaintiffs moved the trial court for leave to amend their complaint to allege a violation of MCL 123.141(2) and (3).

Defendant responded to plaintiffs' motion to amend their complaint by arguing that it should be denied as futile. On February 15, 2013, the trial court heard the two outstanding motions. On June 21, 2013, the trial court entered an opinion and order granting summary disposition in favor of defendant. [Footnotes omitted.]

Thereafter, plaintiffs filed an appeal in this Court, arguing that

(1) water and sewer rate increases that occurred under former finance director Townsend in September 2011 were not authorized by defendant's ordinances, (2) EM Brown did not have the authority to ratify Townsend's unauthorized increases and then further increase water and sewer rates in violation of the same ordinances, and (3) defendant wrongly deposited funds from water and sewer revenue into a single pooled cash account. [*Id*. at 82-83.]

With regard to the first of those claims of error, the *Kincaid II* Court agreed with plaintiffs "in part," holding that some of the September 2011 rate increases violated the applicable ordinances. *Id*. at 84. With regard to the second claim of error, this Court agreed with plaintiffs that EM Brown lacked "the authority to ratify a previously unauthorized rate increase[.]" *Id*. at 91. Contrastingly, with regard to the third claim of error, this Court held that the trial court had properly granted summary disposition under MCR 2.116(C)(10), concluding that "plaintiffs provided no evidence that [Flint]'s accounting system was illegal." *Id*. at 93. Finally, this Court held that it was unable to "discern on what basis the trial court denied plaintiffs' motion to amend their complaint;" therefore, this Court remanded that issue with instructions for the trial court "to consider the additional claims in plaintiffs' proposed amended complaint and articulate its reasons for granting or denying the motion." *Id*. at 95.

On remand, the trial court granted plaintiffs leave to file their first amended complaint. In their amended complaint plaintiffs continue to allege that the water and sewer rate increases between January 15, 2011 and September 15, 2011 were contrary to the Flint City Ordinances and that the money collected was illegally pooled with the general fund and was used to pay general obligations unrelated to the sewer or water expenses. In addition, plaintiffs alleged, somewhat confusingly, that defendant violated Ordinance 46-52 when it charged and collected water and sewer rates between July 3, 2006 and June 30, 2012 (or September 15, 2011).[1] Plaintiffs stated legal theories were for breach of contract, or, in the alternative, for unjust enrichment, and throughout the complaint, plaintiffs alleged that defendant's actions were "Ultra Vires." Plaintiffs sought the equitable remedy of "recoupment," but also sought that the "excessive, illegal, and ultra vires" rate increases be refunded to plaintiffs. Plaintiffs also requested declaratory relief in the form of an injunction.

Defendant moved for summary disposition under MCR 2.116(C)(7) and (C)(8). In support, it argued that summary disposition was appropriate under MCR 2.116(C)(7) on dual grounds: (1) because Flint was entitled to immunity under the governmental immunity under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*., and (2) because plaintiffs' claims were barred by the three-year period of limitation set forth by MCL 600.5805(10). Regarding MCR 2.116(C)(8), Flint contended that summary disposition of all plaintiffs' claims was appropriate (1) because plaintiffs' "egregiously belated claims" were barred by the equitable

---

[1] Without consistency or explanation, the first amended complaint sets forth the time range for the claim starting in 2006 as being "between July 3, 2006 and September 15, 2011" in one part; between "July 3, 2006 and June 30, 2012" in other parts; and as "between June 30, 2012 and July 3, 2006" for other parts.

doctrine of laches, (2) because plaintiffs had failed to plead the claims in their first amended complaint in avoidance of governmental immunity, alleging "ultra vires" acts where none existed, and (3) because the claims were precluded by the res judicata effect of a ruling in related litigation (specifically, the order appealed and decided in *Shears v Bingaman*, unpublished per curiam opinion of the Court of Appeals, issued August 24, 2017 (Docket No. 329776)). Additionally, Flint contended that, in light of this Court's decision in *Kincaid I*, unpublished order of the Court of Appeals, entered June 29, 2012 (Docket No. 310221), collateral estoppel precluded plaintiffs from relitigating the issue whether the rate increases at issue were merely "revisions of existing user fees[.]" Defendant further argued that Count V of plaintiffs' first amended complaint (alleging that Flint had improperly commingled funds) was barred by the law of the case doctrine. In particular, Flint noted that in *Kincaid II*, this Court had ruled that plaintiffs failed to present any evidence that the commingling of such funds was unlawful. See *Kincaid II*, 311 Mich App at 93.

The trial court dispensed with oral argument[2] and denied Flint's motion for summary disposition in a written opinion and order. Concerning the preclusive effect of *Shears*, the trial court indicated that it was then unable to decide that issue, noting that it was "not conversant with all of the specifics of the *Shears* litigation" and that the lower court file in *Shears* was unavailable because it had been conveyed to this Court for the then-pending appeal in *Shears*. Nor did the trial court's opinion squarely address Flint's other arguments in favor of summary disposition. Rather, the trial court glossed over those arguments, reasoning as follows:

> Defendant [Flint] has filed a motion to dismiss plaintiffs' first amended complaint on the grounds that the complaint raises issues not contemplated or contained within the original complaint filed by the plaintiffs. If that were not the case, there would be no reason to amend the Complaint. This Court has reviewed the briefs submitted with respect to this motion and the Court finds the plaintiffs' response to be correct. This Court did not rule that an amended complaint could never be filed. The denial was without prejudice. However, to the extent that the amended complaint raises issues that were addressed by [the circuit court] or by the Court of Appeals in the *Shears* case, the Court reserves the right to revisit the question upon the return of the *Shears* file to Genesee County.

Defendant appealed in this Court, alleging that the trial court erred by failing to grant it summary disposition (1) based on governmental immunity under the GTLA, (2) because the local ordinances at issue in this matter do not afford plaintiffs any private cause of action against defendant, (3) for plaintiffs' failure to rebut the strong presumption that those ordinances were not intended to create vested contractual rights, (4) in light of the applicable period of limitations, (5) under the equitable doctrine of laches, (6) under the law of the case doctrine, (7) because collateral estoppel precludes relitigation of previously decided issues, and (8) because res judicata bars all of plaintiffs' claims in this action. In an unpublished per curiam opinion,

---

[2] Under MCR 2.119(E)(3), "[a] court may, in its discretion, dispense with or limit oral arguments on motions."

this Court concluded that plaintiffs' claims were barred by res judicata; therefore, we reversed the trial court's order denying summary disposition and remanded for entry of an order granting defendant summary disposition under MCR 2.116(C)(7). *Kincaid v City of Flint*, unpublished order of the Court of Appeals, entered June 26, 2018 (Docket Nos. 337972 and 337976) (*Kincaid III*).[3]

Plaintiffs applied for leave in our Supreme Court, which, as indicated *supra*, vacated our opinion and remanded to this Court to reconsider plaintiffs' unjust enrichment claims and, as necessary, the issues raised by defendant that we declined to address in *Kincaid III*. We do so now.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Per the *Kincaid V* Court's directive, we now consider whether the trial court erred by denying defendant's motion for summary disposition. Our review of a trial court's decision regarding a motion for summary disposition is de novo *Heaton v Benton Constr Co*, 286 Mich App 528, 531; 780 NW2d 618 (2009). Likewise, we review de novo whether governmental immunity applies under the GTLA, *Ray v Swager*, 501 Mich 52, 61; 903 NW2d 366 (2017), and whether the applicable statute of limitations bars a claim, *Kloian v Schwartz*, 272 Mich App 232, 235; 725 NW2d 671 (2006). "De novo review means that we review the legal issue independently, without required deference to the courts below." *Wright*, 504 Mich at 417.

### B. ANALYSIS

### 1. BREACH OF CONTRACT

We first consider whether the trial court erred by denying defendant's motion for summary disposition of Counts I and III of plaintiffs' first amended complaint. Defendant argues that these claims should have been dismissed under MCR 2.116(C)(8). We agree.[4]

---

[3] The prior action identified by this Court in *Kincaid III* was *Shears v Bingaman*, unpublished per curiam opinion of the Court of Appeals, issued August 24, 2017 (Docket No. 329776) (*Shears I*). *Shears I*, however, has been vacated in part and remanded to the trial court for further proceedings. *Shears v Bingaman*, 505 Mich 882 (2019) (*Shears II*). Accordingly, because the *Shears* case is again pending in the trial court without any final judgment, and additional appeals may ensue, the decision in *Shears I* cannot be considered a "final" decision for purposes of res judicata. See *In re Bibi Guardianship*, 315 Mich App 323, 333; 890 NW2d 387 (2016). Additionally, we note that on remand the *Shears* case has been stayed pending resolution of the appeal in this case. See register of actions Docket No. 14-103476-CZ available at http://www.co.genesee.mi.us/roaccsinq/default.aspx, last accessed April 8, 2020.

[4] Defendant also asserts that this claim should have been dismissed under MCR 2.116(C)(7). However, because we agree that the court erred by not granting summary disposition under MCR

Summary disposition under MCR 2.116(C)(8) is appropriate if the plaintiff has "failed to state a claim on which relief can be granted." As explained by our Supreme Court in *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019):

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint. *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006). When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013); MCR 2.116(G)(5). A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery. *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004).

In their first amended complaint, plaintiffs allege that a contract for the provision of water services was created by the Flint City Ordinances. Plaintiffs contend that under the ordinance-created contract defendant is a vendor of water services and plaintiffs, the purchasers of the "water commodity," are defendant's customers. Specifically, in Counts I and III, plaintiffs allege that by violating Ordinances 46-52.1 and 46-57.1, defendant breached its contract with plaintiffs by forcing them to overpay for water and sewer services. In response, defendant argues that no contract was created by the Flint City Ordinances.

"[T]he rules governing statutory interpretation apply with equal force to a municipal ordinance[.]" *Bonner v City of Brighton*, 495 Mich 209, 222; 848 NW2d 380 (2014). Although the

> venerable principle that a legislative body may not bind its successors can be limited in some circumstances because of its tension with the constitutional prohibitions against the impairment of contracts, . . . such surrenders of legislative power are subject to strict limitations that have developed in order to protect the sovereign prerogatives of state governments. A necessary corollary of these limitations . . . is the strong presumption that statutes do not create contractual rights. [*Studier v Mich Pub Sch Employees' Retirement Bd*, 472 Mich 642, 660-661; 698 NW2d 350 (2005) (citations omitted).]

"This well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state." *Id*. at 661 (quotation marks and citation omitted). "Thus, the party asserting the creation of a contract must overcome this well-founded presumption, and we proceed cautiously both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation." *Id*. at 662 (quotation marks and citation omitted). "The first step in this cautious procession is to examine the statutory language itself. In order for a statute to form the basis of a contract, the statutory language must be plain and susceptible of no other

_____

2.116(C)(8), we decline to consider whether summary disposition was also warranted under (C)(7).

reasonable construction than that the Legislature intended to be bound to a contract." *Id*. (quotation marks and citations omitted). Moreover, "as a general rule, a statute will not be held to have created contractual rights if the Legislature did not covenant not to amend the legislation." *Id*. at 663 (quotation marks and citations omitted).

Flint Ordinance, § 46-52.1 provides:

CALCULATION OF RATES.

(a) Every year the Director of Finance shall calculate and transmit on or before April 15 to the Mayor and City Council the new water rate schedules with a complete itemization of water system costs for all classes of customers as given in § 46-52, for the purpose of calculating all bills for the forthcoming 12 months beginning July 1 of that year. The new water rate schedules shall be published at least 30 days prior to the date of implementation.

(b) Water rates shall be reviewed annually and the water rate percentage index (WRI) as applied to the water rate schedules shall be limited to an adjustment of 8% in any year unless:

(1) The adjustment is necessary to provide for all costs of operation, maintenance, replacement and debt service of the water supply system; or

(2) The adjustment is necessary to comply with applicable provisions of the City's water supply revenue bond resolutions or ordinances.

Flint Ordinance, § 46-57.1 provides:

CALCULATION OF RATES.

Every year the Director of Finance shall calculate and transmit, on or before April 15, to the Mayor and City Council the new sewage rate schedules with a complete itemization of sewage system costs for all classes of customers as given in § 46-57, for the purpose of calculating all bills for the forthcoming 12 months beginning July 1 of that year. The new sewage rate schedules shall be published at least 30 days prior to the date of implementation.

Based on the plain language of the ordinances, it is clear that neither Ordinance 46-52.1 nor Ordinance 46-57.1 expressly state any intent to bind defendant contractually with regard to pricing structures. Indeed, in their brief on appeal, plaintiffs admit "that there was no express contract[.]"

Furthermore, assuming arguendo that one could reasonably infer an intent to contract on behalf of Flint based on ordinances 46-52.1 and 46-57.1, such an inference is insufficient. On their face, the ordinances are equally susceptible—if not more so—to a reasonable interpretation that they were merely intended to state Flint's policy with regard to rate calculation. Also fatal to plaintiffs breach of contract claims is that the ordinances did not state (or imply in any way), that Flint would be unable to subsequently amend them. Accordingly, plaintiffs have failed to

rebut the strong presumption that Flint Ordinances, §§ 46-52.1 and 46-57.1, were not intended to bind Flint contractually to any particular pricing schedule. Therefore, the trial court erred by failing to grant Flint summary disposition of plaintiffs' breach of contract claims (Counts I and III) under MCR 2.116(C)(8). We reverse the court's order denying summary disposition with respect to Counts I and III, and remand for entry of an order granting defendant summary disposition on both claims under MCR 2.116(C)(8).

## 2. UNJUST ENRICHMENT

Defendant next argues that the trial court erred by not summarily dismissing plaintiffs' unjust enrichment claims set forth in Counts II and IV. "In order to sustain the claim of unjust enrichment, plaintiff must establish (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003). "If this is established, the law will imply a contract in order to prevent unjust enrichment." *Id*. "However, a contract will be implied only if there is no express contract covering the same subject matter." *Id*.

We first consider defendant's argument that the Flint Ordinances at issue here, Flint Ordinances, §§ 46-52.1 and 46-57.1, did not afford plaintiffs a private cause of action. We agree only in part.

"[N]o cause of action can be inferred against a governmental defendant." *Myers v City of Portage*, 304 Mich App 637, 643; 848 NW2d 200 (2014). Absent "*express* legislative authorization, a cause of action cannot be created in contravention of the broad scope of governmental immunity[.]" *Lash*, 479 Mich at 194 (quotation marks and citations omitted; emphasis added). Yet, it has long been recognized that "[t]he right to recover money illegally exacted does not depend upon the statute." *Pingree v Mut Gas Co*, 107 Mich 156, 157; 65 NW 6 (1895). Instead, a common-law action, i.e., an action not dependent upon a statute (or in this case an ordinance), is available to allow recovery for such unlawful exactions. See *id*. *Hyde Park Co-op v City of Detroit*, 493 Mich 966 (2013); *Bond v Pub Sch of Ann Arbor Sch Dist*, 383 Mich 693, 705; 178 NW2d 484 (1970), citing *City of Detroit v Martin*, 34 Mich 170, 174 (1876) ("in all such cases, the party pays under compulsion and may afterwards in an action of assumpsit recover back the amount of the illegal exaction.").[5] Based on these principles, it is plain that plaintiffs cannot maintain a cause of action for money damages based on defendant's mere violation of a City Ordinance, *Lash*, 479 Mich at 194, but it is equally clear that plaintiffs may maintain a cause of action for a refund of an unlawful exaction.

In Count IV (unjust enrichment), plaintiffs expressly identified the 22% increase to the water and sewer rates as the misconduct that resulted in plaintiffs' overpaying for water and sewer services. In *Kincaid II*, this Court concluded that some of the September 2011 rate increases violated the applicable ordinances. *Kincaid II*, 311 Mich App at 84. Given that the rate increase was in violation of the statute for the reasons stated in *Kincaid II*, Count IV

---

[5] Modernly, "assumpsit" is often described as an action for an implied contract. *Garcia v McCord Gasket Corp*, 201 Mich App 697, 714; 506 NW2d 912 (1993).

properly sets forth a claim for unjust enrichment premised on an unlawful exaction. See *Pingree*, 107 Mich at 157. Moreover, as our Supreme Court made clear in *Wright*, a claim for unjust enrichment is not barred by the GTLA. *Wright*, 504 Mich at 422, summary disposition of Count III was not appropriate under MCR 2.116(C)(7).[6]

Turning to Count II (unjust enrichment), plaintiffs argue that defendant "charged and collected an illegal water readiness to serve charge . . . between January 15, 2011 and September 15, 2011" and that defendant "charged and collected an illegal water readiness to service charge . . . between June 30, 2012 and July 3, 2006 [sic]." Although plaintiffs allege that by receiving the "unauthorized/illegal water service charge payments" defendant "unjustly received" a benefit from plaintiffs in breach of an implied contract for the above timeframes, nothing in Count II specifically identifies *why* the water service charge was illegal or unauthorized. Turning to other sections of the first amended complaint, plaintiffs allege that defendant violated Flint City Ordinance, § 46-52(b)(1), which provides that "[w]here the customer has a remote water meter and the bills are for residential, small commercial and industrial accounts, a readiness-to-serve charge shall apply. The charges shall be established from time to time by resolution of the City Council, kept on file by the City Clerk, and contained in Appendix A of the City Code." Plaintiffs alleged that the resolution required by Ordinance 46-52(b)(1) was not kept on file or contained in Appendix A of the City Code at the times relevant to this lawsuit. Accordingly, based on consideration of the entire first amended complaint, it appears that the unjust enrichment claim stated in Count II is premised on defendant's alleged violation of Ordinance, § 46-52(b)(1). Yet, even assuming that such a violation exists, it does not automatically mean that all payments for the water services resulted in an inequity. Nothing in the complaint indicates that plaintiffs did not receive the benefit of the water services that they paid for

---

[6] Defendant, in a supplemental brief, contends that *Wright* should not apply in this case because there is no contract between it and plaintiffs in this case. That distinction, however, is not dispositive. In *Wright*, the plaintiff brought an unjust-enrichment claim against his employer after it overcharged him for health-insurance premiums, thereby enriching itself at his expense. *Wright*, 504 Mich at 414-415. The *Wright* Court explained that unjust enrichment seeks "to correct against one party's retention of a benefit at another's expense. And the correction, or remedy, is therefore not compensatory damages, but restitution. Restitution restores a party who yielded excessive and unjust benefits to his or her rightful position." *Id*. at 419 (citing Restatement (Third) of Restitution & Unjust Enrichment § 1 (2011)). Here, plaintiffs are seeking a refund of money overpaid for water and sewer services. Thus, as explained in *Wright*, the GTLA does not bar the claim. That is not to say that a plaintiff will automatically be able to avoid governmental immunity by labeling a tort claim as a claim for unjust enrichment. When evaluating summary disposition motions, we examine the nature of the claim, not the label that the parties attach to the claim. See *Manning v Amerman*, 229 Mich App 608, 613; 582 NW2d 539 (1998) (stating that courts are not bound by the labels that parties attach to their claims); see also *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007) ("It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim.").

between July 3, 2006 and June 30, 2012. Furthermore, there is nothing in the complaint indicating that the amount charged was illegal. Instead, Count II alleges a mere violation of the statute, for which there is no private cause of action for money damages available. See *Lash*, 479 Mich at 194. Accordingly, the trial court erred by denying defendant summary disposition on Count II of the complaint.

### 3. COUNT V

Next, we also examine Count V, which is labeled "equitable remedy—recoupment by refunds of the 22% water and sewer rates of January 15, 2011 and the water service charges from July 3, 2006—September 15, 2011." It provides:

> 54. FLINT's excessive/illegal/Ultra Vires water and sewer rates, and water service charges, charged and collected between January 15, 2011 and September 15, 2011 were illegal charges that were collected for an improper purpose in violation of law, including but not limited to using restricted water and sewer revenues to fund the general fund or other funds or general operations of FLINT.

> 55. FLINT's excessive/illegal/Ultra Vires water service charges, charged and collected between July 3, 2006 and September 15, 2011 were illegal charges that were collected for an improper purpose in violation of law, including but not limited to using restricted water service charge revenues to fund the general fund or other funds, or general operations of FLINT.

> 56. FLINT'S actions alleged herein, through the Ultra Vires actions and misconduct of various former city officials constitute illegal charges and collections from plaintiffs that proximately caused Plaintiffs to make overpayments to FLINT which should be ordered refunded by FLINT to Plaintiffs.

Defendant contends that Count V, which alleges that Flint unlawfully used its water and sewer revenues to "fund the general fund," is barred by the law-of-the-case doctrine. We agree.

"Under the law of the case doctrine, if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Grievance Admin v Lopatin*, 462 Mich 235, 259; 612 NW2d 120 (2000). Here, as defendant correctly notes, *Kincaid II*, 311 Mich App at 92, explicitly ruled on the merits of this issue, as follows: "Plaintiffs argue that defendant illegally commingled funds. We find no merit to this claim." Under the law of the case doctrine, *Kincaid II*'s judgment in that regard is binding on the trial court, which was not entitled to "take action on remand . . . inconsistent with the judgment" of this Court. See *Grievance Admin*, 462 Mich at 260. Consequently, to the extent that the claims in plaintiffs' first amended complaint alleged that Flint's commingling of funds was unlawful, summary disposition of those claims was appropriate under MCR 2.116(C)(8). No possible factual development could justify granting plaintiffs relief regarding such claims. The trial court erred by denying summary disposition on this basis.

## 4. DECLARATORY RELIEF

Count VI of plaintiffs' amended complaint seeks declaratory relief in the form of an injunction. Defendant contends that this claim is barred by the GTLA. However, in *In re Bradley Estate*, 494 Mich 367, 389 n 54; 835 NW2d 545 (2013), our Supreme Court explained that the GTLA does not afford governmental immunity against claims seeking declaratory relief. Accordingly, the trial court did not err by declining to grant summary disposition of this claim.

## III. CONCLUSION

Based on our de novo review, we conclude that the trial court erred by not summarily dismissing Counts I and III (breach of contract) under MCR 2.116(C)(8). Additionally, we conclude that summary disposition under MCR 2.116(C)(8) was warranted for Count II (unjust enrichment) and the parts of Count V that sought recovery for the imposition of a water readiness charge in violation of Ordinance, § 46-52(b)(1), between July 3, 2006 and September 15, 2011. The court also erred by not dismissing Count V under the law-of-the-case doctrine. However, the trial court did not err by denying summary disposition of Count IV and Count VI. Accordingly, we affirm the court's denial of summary disposition as to Count IV and Count VI, but we reverse the remainder of the order and remand for the court to enter an order granting defendant summary disposition of Counts I, II, III, and V.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. No taxable costs. MCR 7.219(A). We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien