*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NATHAN SWAN,

　　　　　Plaintiff-Appellant,

v

PATRICK O'LEARY, JENNIFER O'LEARY,
BLUE PENINSULA, LLC, and BLUE PENINSULA
CARPENTRY, LLC, doing business as BLUE
PENINSULA LUXURY HOMES,

　　　　　Defendants-Appellees,

and

MARK ALAN BUEBY, M&M BUILDERS, and
BBMK CONTRACTING, LLC,

　　　　　Defendants.

UNPUBLISHED
July 08, 2025
11:13 AM

No. 368112
Charlevoix Circuit Court
LC No. 2022-072027-NI

Before: CAMERON, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's grants of summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in favor of defendants[1] Patrick O'Leary and Jennifer O'Leary, and defendants Blue Peninsula, LLC, and Blue Peninsula Carpentry, LLC, doing business as Blue Peninsula Luxury Homes (collectively "BPH"). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose after plaintiff fell from a wooden platform while working on a construction project and suffered serious injuries. The O'Leary defendants owned the construction site

---

[1] The remaining defendants were dismissed by stipulation and are not parties to this appeal.

property, and Patrick O'Leary owned BPH, the home construction company that served as the project's general contractor. Patrick, through BPH, hired various subcontractors to complete the project. Among these subcontractors was defendant Mark Alan Bueby, who, along with plaintiff and two other workers under Bueby's employ, was responsible for the rough construction, siding, and interior trim of the home being built. To install the siding along the home, plaintiff and his coworkers constructed the aforementioned wooden platform. Plaintiff and his coworkers then placed the platform on the forks of a lift owned by Bueby to elevate and move materials and workers at the job site. Their use of the wooden platform was in violation of the Michigan Occupational Safety and Health Administration (MIOSHA) rules.

Plaintiff filed suit alleging claims of negligence under the common work area and retained control doctrines. After discovery was completed, the O'Learys and BPH each moved for summary disposition. Plaintiff initially only responded to BPH's motion. At the summary disposition hearing relating to BPH, plaintiff briefly mentioned a possible claim for premises liability for the first time, which BPH's counsel correctly pointed out was not alleged in his complaint and was irrelevant as to BPH. With the trial court's permission, plaintiff subsequently filed a response to the O'Learys' motion for summary disposition. Within his response, plaintiff briefly requested leave to amend his complaint to include a premises-liability claim. At a second motion hearing, the trial court denied plaintiff's request to amend and granted defendants' motions for summary disposition. Plaintiff now appeals.

## II. LEAVE TO AMEND COMPLAINT

Plaintiff argues the trial court erred by denying his request to amend his complaint to include a premises-liability claim against the O'Learys. We disagree.

## A. STANDARD OF REVIEW

This Court "will not reverse a trial court's decision to deny leave to amend pleadings unless it constituted an abuse of discretion." *Ormsby v Capital Welding, Inc*, 471 Mich 45, 53; 684 NW2d 320 (2004). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010).

## B. ANALYSIS

MCR 2.118(A)(2) provides that a party may "amend a pleading only by leave of the court or by written consent of the adverse party" and that "[l]eave shall be freely given when justice so requires."

> Because a court should freely grant leave to amend a complaint when justice so requires, a motion to amend should ordinarily be denied only for particularized reasons. Those reasons include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice, or futility. Further, MCR 2.116(I)(5) states that when the trial court summarily disposes of a case under subrules (C)(8), (C)(9), or (C)(10), the trial court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be

-2-

justified. [*Kincaid v Flint*, 311 Mich App 76, 94-95; 874 NW2d 193 (2015) (quotation marks and citations omitted).]

In denying plaintiff's motion to amend on futility grounds, the trial court reasoned:

Finally, to the extent plaintiffs [sic] seek to amend the Complaint to pursue a premises liability claim, the [c]ourt finds that such an amendment would be futile. The O'Leary defendants would be entitled to dismissal, pursuant to MCR [2.116(C)(10)] for the reasons asserted by defense counsel in the briefing. [The] Michigan Supreme Court has clearly directed and declared that premises liability is not a way around or a way for a plaintiff to avoid having to meet the requirements of the common work area doctrine exception.

In his response to the O'Learys' motion for summary disposition, plaintiff argued that the addition of a premises liability claim against the O'Learys was warranted because the wooden platform was "a dangerous condition" that "would be apparent even by casual inspection." Plaintiff claimed the danger posed by the platform, and lack of siderails, too, "was obvious[.]" He continued:

What was unknown to Plaintiff but should have been known by O'Leary had he conducted a reasonable inspection given the obvious dangers presented by the make-shift [sic] platform. That is, Defendant O'Leary could have discovered that the platform was of insufficient strength and was failing. Defendant O'Leary admits to doing nothing. Thus, questions of material fact exist as to Plaintiff's premises liability claim.

"[A] land possessor owes a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 148; 1 NW3d 44 (2023) (quotation marks and citation omitted). However, "landowners are not insurers . . . both possessors of land and those who come onto it must exercise common sense and prudent judgment when confronting hazards on the land." *Id*. at 147 (quotation marks and citation omitted). "These rules balance a possessor's ability to exercise control over the premises with the invitees' obligation to assume personal responsibility to protect themselves from apparent dangers." *Hoffner v Lanctoe*, 492 Mich 450, 459-460; 821 NW2d 88 (2012).

Plaintiff argues that, by deeming the addition of a premises-liability claim futile, the trial court erroneously concluded that the O'Learys did not owe him a duty as landowners because "a landowner cannot be held liable under a premises liability theory where the common work area doctrine is present." Plaintiff acknowledges that a premises-liability claim may not ordinarily be available in such circumstances, *Banaszak v Northwest Airlines, Inc*, 485 Mich 1038, but stresses the trial court erred by deeming this to be a categorical rule. We do not read the trial court's rationale as making such a conclusion; it simply recognized—correctly—that premises liability cannot be used as a means to unduly circumvent the common work area doctrine.

Moreover, while plaintiff may not be categorically foreclosed from asserting a premises-liability claim, he still had to demonstrate that such a claim would be viable in this case. Plaintiff has not shown that the trial court erred when it concluded he had failed to do so. In particular,

plaintiff has offered no authority or argument to support his claim that the O'Learys could be held liable under a premises-liability theory when there is no dispute that it was Bueby, plaintiff, and plaintiff's coworkers who brought the lift onto the property and set up the wooden platform. See, e.g., *Jones v DaimlerChrysler Corp*, 488 Mich 1036, 1036 (2011) (rejecting the premises-liability claim of an independent contractor's employee where the employee himself "was aware of the hazard, and indeed had ordered its creation."). Nor has plaintiff otherwise meaningfully explained why his particular claim would fall outside the general circumstances considered in *Banaszak*, 485 Mich at 1038. As such, plaintiff has failed to demonstrate that the trial court abused its discretion by denying his request to amend. *Ormsby*, 471 Mich at 53.[2]

## III. SUMMARY DISPOSITION

Plaintiff also argues the trial court erred in granting BPH's and the O'Learys' motions for summary disposition because genuine issues of fact remained as to whether he satisfied the elements of the common work area and retained control doctrines. We disagree.

## A. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim." *El-Khalil*, 504 Mich at 160 (emphasis omitted). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves

---

[2] Furthermore, while the trial court only ruled on futility grounds, we agree with the O'Learys that plaintiff's request would also have caused undue delay. *Kincaid*, 311 Mich App at 94. "[D]elay, alone, does not warrant denial of a motion to amend." *Bailey v Antrim Co*, 341 Mich App 411, 432; 990 NW2d 372 (2022) (quotation marks and citation omitted). "However, a court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result." *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997).

> [A] trial court may find prejudice when the moving party seeks to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial. [*Id*. at 659-660.]

"A party is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed on the basis of claims asserted in the original complaint before introducing entirely different legal theories in an amended complaint." *Id*. at 661 (quotation marks and citation omitted). This is precisely what plaintiff did. Thus, denial of his request to amend was proper for undue delay as well as futility.

open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). Under the burden-shifting framework of MCR 2.116(C)(10):

> [T]he moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) (citations omitted).]

## B. ANALYSIS

"At common law, property owners and general contractors generally could not be held liable for the negligence of independent subcontractors and their employees." *Ormsby*, 471 Mich at 48. Since then, our Supreme Court has "set forth a new exception to this general rule of nonliability, holding that, under certain circumstances, a general contractor could be held liable under the 'common work area doctrine' and, further, that a property owner could be held equally liable under the 'retained control doctrine.' " *Id*.

> [F]or a general contractor to be held liable under the "common work area doctrine," a plaintiff must show that (1) the defendant, either the property owner or general contractor, failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area. [*Id*. at 54.]

"[A] plaintiff's failure to satisfy any one of the four elements of the common work area doctrine is fatal to [his or her] claim." *Id*. at 59 (quotation marks and emphasis omitted).

On appeal, plaintiff only challenges the trial court's findings as to the third and fourth elements of the common work area doctrine. Under the third element, "liability should not be imputed unless the dangers in the work area involve a *high degree* of risk to a *significant number* of workers." *Hughes v PMG Bldg, Inc*, 227 Mich App 1, 7; 574 NW2d 691 (1997) (quotation marks and citation omitted). The danger at issue in this case was the use of a noncompliant wooden platform at elevation without proper fall protection. The parties do not dispute that the danger constituted a "high degree of risk." *Ormsby*, 471 Mich at 54. Instead, they dispute whether the risk was posed to "a significant number of workers." *Id*.

We conclude plaintiff cannot establish the third element of the common work area doctrine. In *Hughes*, this Court held that the plaintiff failed to establish the third element of the common work area doctrine because it was "uncontroverted that [the] plaintiff was one of only four men who would be working on top of the overhang." *Hughes*, 227 Mich App at 7-8. Similarly, our Supreme Court, in *Alderman v JC Dev Communities, LLC*, 486 Mich 906, 906 (2010), held there

was not a high degree of risk to a significant number of workers because "[t]he only employees exposed to the risk . . . were two to six employees of one subcontractor, including the plaintiff[.]" In this case, only four people were shown to be near or on the platform when it was being improperly used: plaintiff, Bueby, and two other independent contractors in Bueby's employ. Therefore, at most, only four people were at risk of the danger in this case, and they were doing the same work for the same subcontractor. Thus, the risk was not posed to a significant number of workers. See, e.g., *Alderman*, 486 Mich at 906; *Hughes*, 227 Mich App at 7-8.

On appeal, plaintiff argues the risk was posed not only to himself, Bueby, and his coworkers, but also to Patrick O'Leary, who had previously visited the site while people were using the lift, and "multiple people at the site on the day of the accident that were installing drywall." He further asserts that "other subcontractors and maintenance people were around the site throughout the project[,]" and that, therefore, "when that platform collapsed, anyone who was at the construction site who happened to be walking in the area was at risk of being struck by the falling equipment."

In response, defendants argue that only those individuals close to the lift *when plaintiff fell* may be considered when analyzing the third element of the common work area doctrine. In support of this argument, they rely on a footnote in *Ormsby* stating: "The high degree of risk to a significant number of workers must exist when the plaintiff is injured; not after construction has been completed[,]" *Ormsby*, 471 Mich at 60 n 12. We agree with the reasoning of the United States Court of Appeals for the Sixth Circuit rejecting such a narrow interpretation of *Ormsby*:[3]

> In *Ormsby*, the court also stated that the "high degree of risk to a significant number of workers must exist when the plaintiff is injured; not after construction has been completed." [The defendant] interprets this language to suggest that the number of workers and subcontractors must be measured at the exact moment that the worker is injured. But this interpretation would ignore the second half of the sentence. Read as a whole, the sentence is consistent with the rest of the *Ormsby* opinion and with the prior opinions in *Hughes*, *Groncki*, and *Candelaria*. The comparison to "after the work is completed" suggests that the time "when the plaintiff is injured" refers to the time period during the ongoing construction—not to a specific moment. When a construction phase is over, the nature and extent of the risk to workers presumably changes, and is no longer the "same risk." [*Richter v American Aggregates Corp*, 522 Fed Appx 253, 263 (CA 6, 2013) (citations omitted).]

Our Supreme Court recently acknowledged *Richter*'s broader temporal examination when considering which individuals were subject to the high degree of risk for purposes of the common work area doctrine:

---

[3] "Though not binding on this Court, federal precedent is generally considered highly persuasive when it addresses analogous issues." *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 360 n 5; 597 NW2d 250 (1999).

Of course, discerning the relevant time period need not involve a binary choice—during, or after, construction. Rather, it follows from *Ormsby* and its predecessors that the relevant time is the time period during which the hazardous activity is occurring or will occur—whether it lasts one hour, one day, or for the duration of a particular construction stage. . . . The length of the relevant time period is defined by the continued existence of the same risk of harm in the same area. [*El-Jamaly v Kirco Manix Constr, LLC*, ___ Mich ___, ___ n 6; ___ NW3d ___ (2024) (Docket Nos. 164902, 164903, and 164904); slip op at 20 n 6, quoting *Richter*, 522 Fed Appx at 263.]

Here, the record indicates that the improper use of the wooden platform occurred on multiple days. Thus, the proper consideration is whether the additional individuals plaintiff cites on appeal were subject to the high degree of risk the elevated platform posed—either (1) falling from the platform themselves or (2) being injured underneath the platform after it or someone on it fell—*while it was being improperly used.*

Most of the workers involved in the construction project worked inside the house. These workers could not use the door near the lift because it was screwed shut and inoperable. The indoor workers instead entered the house through the garage. While there were roofers that initially worked outside the home while the siding was being installed, they completed the roof shortly after the siding installation began. Importantly, plaintiff submitted no evidence demonstrating that any of these roofers were near enough to the lift while it was being improperly used to actually be exposed to the danger at issue in this case. As examined above, under the burden-shifting framework of MCR 2.116(C)(10), after the moving party satisfies its initial burden of proof, the burden shifts to the nonmoving party to establish a genuine issue of fact exists. *Quinto*, 451 Mich at 362. "Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id.* Plaintiff failed to satisfy his burden as it relates to the presence of other individuals when the risk existed, and thus failed to establish a genuine issue of material fact as to whether a significant number of workers were at risk of the harm in this case.[4]

Lastly, plaintiff cannot avoid summary disposition on the basis of the retained control doctrine, because:

[T]he "retained control doctrine" is subordinate to the "common work area doctrine" and simply stands for the proposition that when the "common work area doctrine" would apply, and the property owner has stepped into the shoes of the general contractor, thereby "retaining control" over the construction project, that owner may likewise be held liable for the negligence of its independent subcontractors. [*Ormsby*, 471 Mich at 60.]

---

[4] Because "plaintiff's failure to satisfy any one of the four elements of the common work area doctrine is fatal to [his] claim[,]" *Ormsby*, 4771 Mich at 59 (quotation marks omitted), we need not address the fourth element.

-7-

Plaintiff's failure to establish all the elements of the common work area doctrine necessarily means that the O'Learys cannot be held liable for his injuries regardless of whether they retained sufficient control over the project. *Id*. at 60-61.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani